### CULVER *v.* LAMBERT.

1. A borrower secured his note for the loan of money by deed to land, and upon default in payment at maturity the lender sued the note to judgment; upon which judgment an execution issued, and was levied on the land without the lender having first reconveyed it to the borrower. At this sale the lender purchased the land, and a deed was made to him by the sheriff. Subsequently the lender, who had not previously conveyed the land to any one, after having made a deed to the defendant in execution, and after having had the same duly recorded, caused the execution again to be levied on the land, and the land sold thereunder by the sheriff. *Held,* (1) That the first sale was illegal and void; (2) that the second sale was valid. The case of *Napier* v. *Saulsbury,* 63 *Ga.* 477, distinguished.

2. Where the lender went into possession under the first sale, he would be accountable to the borrower for the rents, issues, and profits intermediate of the two sales; but if such rents and profits were insufficient to discharge the judgment, the resale of the property would not be invalid on this account, even as to the lender.

Argued November 13, 1908.—Decided March 10, 1909.

Complaint for land. Before Judge Pendleton. Fulton superior court. March 12, 1908.

*R. O. Lovett,* for plaintiff. *C. L. Pettigrew,* for defendant.

EVANS, P. J. On February 5, 1895, Emma J. Culver borrowed $1,000 from the University of the South, and secured her note for the loan by a conveyance to the lender of a certain lot of land. Judgment was obtained on the note in May, 1898, and the execution issued thereon was levied on the land, and it was sold on

August 2, 1898, and purchased by the lender, who was plaintiff in fi. fa., for $100. The plaintiff did not file any deed of reconveyance to the defendant in fi. fa. before the levy of the execution. Subsequently, on April 1, 1903, the University of the South conveyed the land to the defendant for the purpose of levy and sale, which deed was duly recorded, and thereafter caused its execution to be levied on the land, which was brought to sale after due advertisement, and the plaintiff in fi. fa. became the purchaser. On July 21, 1905, the University of the South sold and conveyed the land to M. A. Lambert. Afterwards the defendant in fi. fa., Emma J. Culver, instituted her action against M. A. Lambert to recover the land; and upon the foregoing facts appearing, the court directed a verdict for the defendant, M. A. Lambert.

1. The controlling question in the case is whether the title of Emma J. Culver was divested under the last sale by the sheriff. It is admitted that the first sale was void. Where one borrows money from another, and makes him a deed to land to secure the debt, and the lender sues the borrower upon his failure to pay the debt at maturity, and obtains a judgment against him, before the execution is levied on the land given as security the lender must reconvey the land to the borrower, and have the deed of reconveyance recorded; and a sale made under a levy without such deed of reconveyance is void, and will be set aside at the instance of the borrower. *Benedict* v. *Gammon Theological Seminary*, 122 *Ga.* 412 (50 S. E. 162). The effect of the cancellation of the deed to the purchaser at the sheriff's sale by a court of equity on this ground is to nullify the proceedings had under the judgment from the time of the illegal levy. The judgment for the debt is not invalidated, but is still enforceable against the land by a levy of the execution, made after the record of a deed of reconveyance by the lender to the borrower. The parties to the illegal sale may voluntarily do what the courts will decree they shall do; that is, they may voluntarily cancel the illegal sale under the same circumstances where a court of equity would decree a cancellation. It is necessary, however, that a voluntary agreement to cancel a sale of this character shall be participated in by the purchaser at the sheriff's sale. He has been induced by the act of the plaintiff to put his money in the land, and the plaintiff will not be allowed

to deprive him of his money, and retrace his illegal steps at pleasure, without restitution or adjustment of the purchaser's rights. *Napier* v. *Saulsbury,* 63 *Ga.* 477. But where the lender who is the plaintiff is also the purchaser at an illegal and void sheriff's sale, we see no reason why he can not treat the sale as void, and proceed in the manner which he should have first adopted in the enforcement of his execution. The defendant can not complain that the plaintiff treats as void a sale which the law pronounces invalid, and proceeds to sell again. The illegal sale did not change the status; it neither invalidated the plaintiff's judgment, nor divested the defendant's title. If the defendant had appealed to a court of equity to cancel the sheriff's deed to the plaintiff on the ground of the illegality of the sale, he could not equitably claim that the proceeds of the sale should be applied upon his debt. He could not have both the land and its proceeds. The second sale could hardly have had the effect of depressing the price of the land because of the prior illegal sale, since the rights of no new parties were injected into the transaction, and it was manifest that the only purpose was to bring the land to sale in a legal manner, under an execution issuing from a judgment founded on a debt to the plaintiff which the defendant had secured by conveying the land to the plaintiff. In the case in hand the plaintiff was the purchaser at the first sale, and in possession of the land at the time he caused the execution to be relevied; and this circumstance differentiates the case from that of *Napier* v. *Saulsbury,* supra, where a stranger was the purchaser at the first sale, and in possession at the time the plaintiff in execution undertook for the second time to have the land levied on and sold. We think that the last sale of the land was valid, and the title of the defendant was divested thereby.

2. At the conclusion of the evidence the plaintiff offered an amendment to the effect, that, after the first sale of the land in 1898, the purchaser thereat, the University of the South, went into possession and remained in possession until 1905, when it conveyed the land to M. A. Lambert, during which time it received the rents, and had quarried enough stone from the land to pay off the judgment if properly accounted for; and the plaintiff prayed that the University of the South be made a party to the suit, and "be made to account for the rents and for the value of the rock taken from said land and said sums be placed as a credit on said judg-

ment." It was also alleged that M. A. Lambert had received, since her purchase, large sums from the sale of rock quarried on the land; and an accounting was asked for the rents and the value of the rock quarried by her. The facts pertaining to the sales of the land, as they appear in the first part of this opinion, were also alleged, and it was prayed that the sales by the sheriff be canceled and set aside. The amendment was disallowed, and properly so. The first sale of the land did not divest the title of E. J. Culver; and when the University of the South entered into possession of the land by virtue of being the purchaser at this illegal sale, it became accountable to her for the rents and profits of the land. *Polhill* v. *Brown,* 84 *Ga.* 338 (10 S. E. 921) ; *Dottenheim* v. *Union Savings Bank & Trust Co.,* 114 *Ga.* 788 (40 S. E. 825). Such rents and profits should have been applied to the credit of the judgment; and if insufficient to have discharged it at the time of the second levy, the execution could legally proceed for the balance. The allegation that the University of the South had quarried sufficient rock to discharge its judgment while it was in possession of the land is too indefinite as an attack upon the judgment as being satisfied at the time of the second sale. The allegation is that the quarrying of stone by the University of the South occurred between 1898 and 1905. The second sale was legal, if the judgment was not satisfied, and this sale took place in 1903. How much stone was quarried before 1903 is not alleged. Since this last sale the University of the South had title, and of course could quarry the land ad libitum. No value is placed on the stone alleged to have been quarried. but only the vague statement made that enough stone was quarried, if properly accounted for, to pay off the judgment; and the prayer is that the amount found to be due on an accounting be credited on the judgment. This averment is too vague to raise the issue that the last sale was void because had under an execution which had been settled. Indeed, the plaintiff does not pray for a cancellation of the sheriff's deed on the ground that the sale is void because the judgment was fully paid off and discharged. If the plaintiff has a cause of action against the University of the South for rents and profits received from the land while in its possession intermediate of the two sales, it is an entirely different controversy from the present suit. If M. A.

Lambert's title is good, she had the right to quarry the stone since her purchase.

*Judgment affirmed. All the Justices concur.*