### A11A1994, A11A2406. DUKE GALISH, LLC et al. v. SOUTHCREST BANK (two cases).

(726 SE2d 54)

MCFADDEN, Judge.

Duke Galish, LLC and the guarantors of its loan (together, "Duke Galish") appeal an order denying confirmation of a foreclosure sale but allowing SouthCrest Bank to conduct a resale of the property securing the loan. They also appeal an order requiring them to post a supersedeas bond. Duke Galish argues that SouthCrest did not timely confirm the operative foreclosure sale and that SouthCrest acted in bad faith. Duke Galish also argues that the trial court lacked authority to require a supersedeas bond in this case. We hold that the foreclosure Duke Galish argues was the operative foreclosure was invalid — and therefore inoperative. And we hold that SouthCrest proceeded in a proper manner to correct the defect by re-foreclosing. And we hold that Duke Galish has not pointed to evidence that SouthCrest acted in bad faith. Therefore, we hold that the trial court did not err in allowing SouthCrest to resell the property. Finally, we hold that the trial court was authorized to require a supersedeas bond and that Duke Galish has not shown that the trial court abused its discretion in setting the amount. We therefore affirm.

The relevant facts are undisputed. Century Security Bank lent Duke Galish $1,720,346.72, and Duke Galish executed a note and security deed. Gary Anglin, Sr., Gary Anglin, Jr., Patrick Anglin and Luxomni Corporation guaranteed Duke Galish's obligation. Duke Galish and the guarantors defaulted.

In the meantime, the original lender, Century Security Bank, went into receivership. The Federal Deposit Insurance Corporation, as receiver, assigned Duke Galish's security deed to SouthCrest. This assignment to SouthCrest was recorded in the superior court on June 7, 2010.

SouthCrest began foreclosure proceedings before the assign-

ment was recorded. It sold the property to itself on May 4, 2010 for $795,000, recorded a deed under power of sale that same day, and filed a petition for confirmation of the sale on May 25, 2010.

But it voluntarily dismissed the confirmation proceeding on June 7, 2010, the same day the assignment was recorded in superior court. SouthCrest advertised and conducted a second foreclosure sale on July 6, 2010, and again purchased the property at foreclosure for $795,000. It filed the instant action to confirm that sale.

Duke Galish moved for summary judgment, essentially arguing that because the May 4, 2010 deed under power had not been cancelled, SouthCrest could not conduct a second foreclosure sale, and the trial court could not confirm that sale. The trial court denied Duke Galish's motion. It ruled that the notice and advertisement of the July 6, 2010, foreclosure sale were legal and regular. But it denied the confirmation petition because SouthCrest had not shown that it sold the property at its fair market value. The court found that SouthCrest acted in good faith, good cause existed to order a resale, and SouthCrest therefore could resell the property. Upon South-Crest's motion, the trial court conditioned supersedeas upon Duke Galish filing a $300,000 bond. Duke Galish appealed from both the summary judgment and the supersedeas order.

## Case No. A11A1994

1. In 2008, the legislature added to OCGA § 44-14-162 subsection (b), which provides:

> The security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located.

Subsection (b) does not include a penalty for failure to comply with its provisions, but its purpose is "to require a foreclosure to be conducted by the current owner or holder of the mortgage, as reflected by public records." Ga. L. 2008, p. 624, § 1/SB 531.

The assignment of the security deed to SouthCrest was not recorded until June 7, 2010, more than a month after the May 4, 2010 foreclosure sale. Duke Galish argues that the failure to comply with OCGA § 44-14-162 (b) rendered the May 2010 sale invalid and voidable — but not void. Consequently, Duke Galish argues, South-Crest could proceed with the July 2010 sale only after setting aside the May 2010 sale through a declaratory judgment action or quiet title action. Simply put, Duke Galish argues that SouthCrest for-

feited its right to seek a deficiency judgment because SouthCrest failed to set aside the first, invalid sale but instead sought to cure the invalidity through re-foreclosure in compliance with the statute.

We are not required to determine whether a failure to comply with OCGA § 44-14-162 (b) rendered the invalid May 2010 foreclosure sale void or merely voidable. In either case, SouthCrest cured the invalidity by conducting a second foreclosure. *Culver v. Lambert*, 132 Ga. 296, 298 (64 SE 82) (1909).

*Culver* involved a borrower's suit to recover certain land securing a debt upon which the borrower had defaulted. When the borrower defaulted, the lender obtained a judgment on the note and levied execution on the land by sheriff's sale without complying with all legal requirements, particularly that the lender first reconvey the land to the borrower and have the deed of reconveyance recorded. Id. at 297. The lender purchased the land at the sheriff's sale. Apparently after discovering the problem, the lender again levied execution on the land by sheriff's sale, this time, while complying with the legal requirements, again purchased the land and then sold it to a third party.

The borrower filed an action to recover the land, contending that the second sale did not divest her of title. The Supreme Court disagreed, holding that

> where the lender . . . is also the purchaser at an illegal and void sheriff's sale, we see no reason why he can not treat the sale as void, and proceed in the manner which he should have first adopted in the enforcement of his execution. The [borrower] can not complain that the [lender] treats as void a sale which the law pronounces invalid, and proceeds to sell again.

*Culver* at 298. The Supreme Court referred to the first sale as "void," but it held that the sale could be set aside "at the instance of the borrower," id. at 297, indicating the concept of voidability that Duke Galish insists is at issue here.

Although *Culver* involved a sheriff's sale of property securing a note after the creditor had obtained a judgment against the borrower, as opposed to the non-judicial foreclosure at issue here, this factual distinction does not undermine the application of the principle that when the lender is also the purchaser at an invalid sale, the lender can treat the sale as void and resell the property in the manner that it should have sold the property in the first place. See also *Cary v. Guiragossian*, 270 Ga. 192, 194 (1) (508 SE2d 403) (1998) (in case where foreclosing party invalidly exercised power of sale in security deed, since the lender had not executed assignment

of the security deed to foreclosing party, "[t]he defect in the first foreclosure was corrected by the proper foreclosure of the security deed after [lender] had validly transferred and assigned it in writing.").

Allowing this practice effectuates the legislative purpose reflected in OCGA § 44-14-162 (b): requiring foreclosures to be conducted by the current owner of the mortgage, as shown by public records. See *Ferguson v. Ferguson*, 267 Ga. 886, 887 (1) (485 SE2d 475) (1997) ("The cardinal rule of statutory construction is to ascertain the legislative intent and purpose in enacting the law and to construe the statute to effectuate that intent. [Cit.]").

Duke Galish argues that the issue is controlled by *Burgess v. Simmons*, 207 Ga. 291 (61 SE2d 410) (1950), in which, it contends, the Supreme Court held that the failure to enter of record an assignment of a security deed renders the foreclosure of that deed voidable, not void. As we held above, however, whether the May 2010 foreclosure sale was void or voidable is irrelevant. In any event, we disagree with Duke Galish's interpretation of the holding in *Burgess*.

In *Burgess*, the Supreme Court did discuss whether a sale under the powers contained in a security deed was void or voidable, but not in the context of the failure to record an assignment. Rather, the issue depended on certain terms in the security deed itself. *Burgess*, supra at 299 (3). Although the Supreme Court did address an issue regarding the failure to record an assignment of the security deed, the court simply rejected the challenge because the party's "claim of title was acquired after notice by a properly recorded deed that the transfer had been made." Id. at 298-299. It did not hold, as *Duke Galish* asserts, that a failure to record an assignment of a security deed renders a subsequent foreclosure sale merely voidable.

2. Duke Galish argues that the trial court erred in authorizing a resale because SouthCrest did not act in good faith during the foreclosure process. It contends that SouthCrest's failure to attempt to remedy the cloud upon title created by the first foreclosure before re-foreclosing demonstrates its bad faith. As Duke Galish acknowledges, SouthCrest did undertake to remedy the defect by dismissing the action to confirm the May 2010 foreclosure sale and by proceeding to foreclose again, after the assignment had been recorded. And we found that undertaking sufficient in Division 1 of this opinion.

Duke Galish also argues that SouthCrest's failure to update the appraisal of the property before re-foreclosing demonstrates bad faith. The trial court observed that SouthCrest obtained two appraisals prior to sale, and its failure to sell and buy the property at its fair market value was not intentional. Duke Galish has not shown that the trial court abused its discretion in finding that SouthCrest acted in good faith. *Adams v. Gwinnett Commercial Bank*, 140 Ga. App.

233, 234-235 (3) (230 SE2d 324) (1976).

### Case No. A11A2406

3. Duke Galish argues that the trial court lacked authority to order a supersedeas bond because the court had not granted monetary relief or disposition of property in SouthCrest's favor. OCGA § 5-6-46 (a) provides:

In civil cases, . . . upon motion by the appellee, . . . the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay if the appeal is found to be frivolous. . . .

The statute describes the amount the trial court should require when the appellant is appealing "a judgment . . . for the recovery of money not otherwise secured." Id. It also provides that where

the judgment determines the disposition of the property in controversy as in real actions, . . . and actions to foreclose mortgages and other security instruments . . . the amount of the supersedeas bond or other form of security shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay.

Id.

Duke Galish argues that the trial court could not require a supersedeas bond because the judgment it is appealing is not a monetary judgment and did not determine the disposition of the property, as it denied confirmation and ordered a re-sale. We disagree and find that this case is controlled by *Cloud v. Georgia Central Credit Union*, 214 Ga. App. 594 (448 SE2d 913) (1994). *Cloud*, like this case, involved "alleg[ations] that [a] foreclosure sale was unlawful." Id. at 595. In *Cloud*, as here, the trial court found that the non-judicial foreclosure sale was lawful. On appeal, the borrowers in *Cloud* argued that OCGA § 5-6-46 (a) did not authorize a supersedeas bond because there was no money judgment. We rejected the argument because the case fell within the disposition-of-property provision of the statute. *Cloud*, 214 Ga. App. at 597 (5).

4. Duke Galish argues that the trial court abused its discretion in requiring a $300,000 bond. "Under OCGA § 5-6-46 the trial court

has the discretion to fix the amount of the bond when a motion is filed requesting a supersedeas bond. *Hyman v. Leathers,* 168 Ga. App. 112, 115-116 (308 SE2d 388) [(1983)]." *Cloud,* 214 Ga. App. at 597-598 (7). The court should fix the amount of the bond to "secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay." OCGA § 5-6-46 (a).

The trial court conducted a hearing at which counsel for Duke Galish reported that Duke Galish was not making payments on the note pending the appeal. SouthCrest argued that interest continued to accrue on the note pending appeal, that taxes on the property were coming due, and that the appeal delayed SouthCrest from pursuing its foreclosure, confirmation and action for deficiency judgment. Under these facts, we conclude that Duke Galish has not shown that the trial court abused its discretion in setting a $300,000 supersedeas bond.

*Judgments affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 16, 2012 —
RECONSIDERATION DENIED MARCH 15, 2012 —

*Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell, John D. Gussio,* for appellants.

*Andersen, Tate & Carr, James C. Joedecke, Jr.,* for appellee.