In the Supreme Court of Georgia

Decided:   March 7, 2016

S15G1007.  AMES et al. v. JP MORGAN CHASE
BANK, N.A., et al.

NAHMIAS, Justice.

In 2007, Cindy and David Ames executed a security deed to their residential property in favor of Washington Mutual Bank, F.A. (WaMu). WaMu's receiver, the Federal Deposit Insurance Corporation (FDIC), later assigned the deed to JP Morgan Chase Bank, N.A (Chase).  When Chase initiated a non-judicial foreclosure sale on the property, the Ameses filed lawsuits in state court and then in federal court, alleging among other things that the assignment of the security deed to Chase was invalid.

We granted certiorari to decide whether the Georgia Court of Appeals erred in concluding in the state lawsuit that the Ameses lack standing to bring such a challenge to the assignment, a conclusion based on that court's previous decisions in Montgomery v. Bank of America, 321 Ga. App. 343 (740 SE2d 434) (2013), and Jurden v. HSBC Mortgage Corp., 330 Ga. App. 179 (765 SE2d

440) (2014) (physical precedent only). As explained below, we hold that the Court of Appeals did not err. We also hold, alternatively, that the assignment issue raised by the Ameses is precluded because it has already been resolved against them in their federal lawsuit by the United States Court of Appeals for the Eleventh Circuit. See Ames v. J.P. Morgan Chase Bank, N.A., 623 Fed. Appx. 983, 986-987 (11th Cir. 2015). We therefore affirm.

1. The property at issue in this case is a plot of land with a very expensive house on it in Alpharetta, Georgia. The Ameses acquired the property on February 16, 2000. On March 30, 2007, they executed the security deed in favor of WaMu to secure a loan refinancing the house for $4,650,000. That deed was recorded in Fulton County on April 6, 2007. The deed grants and conveys the property and the power of sale to WaMu and its "successors and assigns." On September 25, 2008, WaMu was declared insolvent, the FDIC was appointed receiver for WaMu, and the FDIC and Chase executed a purchase and assumption agreement that transferred certain WaMu assets to Chase, including all loans and loan commitments of WaMu. In a power of attorney document recorded in Fulton County on December 18, 2008, the FDIC explained that under the terms and conditions of the purchase and assumption agreement,

2

"[Chase] acquired, among other [WaMu] Assets, all real estate . . . of [WaMu],"
with limited exceptions not relevant here. The FDIC appointed Chase "to act
as Attorney-in-Fact for the [FDIC]" for the limited purpose of transferring "any
interest in real estate . . . and any personal property appurtenant to the real estate
from the [FDIC] to [Chase] or to an affiliate of [Chase]." The document states
that the limited power of attorney was effective on September 25, 2008 and
"automatically revoked" on September 25, 2010.

On August 22, 2012, Chase assigned the Ameses' security deed to itself,
purporting to do so as attorney-in-fact for the FDIC. The assignment, which
was recorded in Fulton County on September 4, 2012, recited that it was
"intended to further memorialize the transfer that occurred by operation of law
on September 25, 2008." The assignment was signed by two vice presidents on
behalf of Chase. The Ameses allege that in October or November 2012, they
asked Chase to provide a "P 190 screen shot" to verify existing business records
and prove that Chase was a secured creditor under their deed, but Chase
declined.

At some point during this period, the Ameses apparently defaulted on the
loan. Chase hired a law firm, Aldridge Pite, LLP (Aldridge), to initiate a non-

judicial foreclosure sale, which was set for January 2, 2013. In response to the threatened foreclosure, the Ameses filed suit against Chase and Aldridge in Fulton County Superior Court in December 2012, alleging among other things that Chase had not been able to provide proof of its ownership of the security deed.[1] The parties agreed to temporarily suspend the foreclosure sale, and the Ameses voluntarily dismissed their case on February 25, 2013.

On April 2, 2013, Aldridge sent a letter to the Ameses notifying them that a foreclosure sale was now set for May 7, 2013. The notice identified Chase as the entity with authority to negotiate and modify the terms of the mortgage. The Ameses contacted Chase and Aldridge demanding proof that Chase was in possession of the loan note and security deed and attempting to stop the foreclosure, but the parties were unable to negotiate an agreement. On April 30, 2013, the Ameses again filed suit in Fulton County Superior Court, moving for a temporary restraining order (TRO) to stop the foreclosure and asserting, among other things, that the assignment of the security deed was invalid so Chase did not have the power to initiate the foreclosure.

---

[1] The complaint and subsequent litigation also included claims about the promissory note for the property, but those claims are not at issue in the case before this Court.

4

The foreclosure sale was then cancelled. The Ameses withdrew their TRO motion as to the cancelled sale, but they continued to pursue their case. On July 29, 2013, Aldridge filed a motion to dismiss. On October 9, 2013, the Ameses filed an amended complaint, adding claims related to possible clouds on the title to the property due to security deeds and liens recorded by the property's previous owners.

On November 18, 2013, the superior court granted Aldridge's motion to dismiss as to both Aldridge and Chase, ruling that the amended complaint failed to state a claim. As relevant here, the superior court relied on the Court of Appeals's decision in <u>Montgomery</u> to conclude that the Ameses do not have standing to challenge the assignment of the security deed to Chase. The Ameses filed a motion to set aside or reconsider the dismissal order, and after the superior court denied that motion, they filed a timely notice of appeal to this Court.

On June 6, 2014, we transferred the appeal to the Court of Appeals because this case does not involve any subject matter within the current exclusive or general appellate jurisdiction of this Court. See Ga. Const. of 1983, Art. V, Sec. VI, Par. II-III. On February 27, 2015, the Court of Appeals

affirmed the superior court's judgment in an opinion not to be officially reported, relying on <u>Montgomery</u> and <u>Jurden</u> to hold in Division 2 (b) that the Ameses lack standing to challenge the validity of the assignment of the security deed to Chase. We granted the Ameses' petition for certiorari to review that holding.[2]

2. While the state court proceedings outlined above were playing out, the Ameses were litigating many of the same issues in a parallel case they filed in federal court. On March 28, 2013, a month before the Ameses filed the state case being appealed here, they filed suit against Chase, Aldridge, and others in a federal district court in Florida, invoking diversity and federal question jurisdiction and asking for, among other things, a declaratory judgment that the security deed for the property had not been validly transferred from WaMu to Chase. Three months after the state case was dismissed by the superior court, the district court dismissed the federal case with prejudice, concluding that the Ameses' claims against Chase and Aldridge were precluded by res judicata under Georgia law because the claims were either already decided in the state

---

[2] We did not ask the parties to address any of the other issues raised in the Ameses' petition for certiorari, and we render no opinion on the other issues decided by the Court of Appeals.

dismissal order or could have been raised in the state case. See Ames v. J.P. Morgan Chase Bank, N.A., No. 8:13-cv-806-T-23TGW, 2014 WL 585653, at *3-4 (M.D. Fla., Feb. 14, 2014).[3]

On appeal, the Eleventh Circuit affirmed the district court's dismissal, but for a different reason. See Ames, 623 Fed. Appx. at 986-987. In an unpublished opinion, the federal appellate court held that the district court had misapplied Georgia preclusion law, explaining that the superior court's decision was not final under Georgia law because it was on appeal at the time of the district court decision and still was not final because this Court had granted the Ameses' petition for certiorari review. See id. at 986. The Eleventh Circuit recognized that "[u]nder the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered." Id. (citation omitted). The Eleventh Circuit properly held that, "'[i]n Georgia, a judgment is suspended when an appeal is entered within the time allowed. And

---

[3] The Ameses' federal complaint included a few parties (including Chase employees) not named in the state case, as well as a few additional claims (including an alleged violation of the federal Fair Debt and Collection Practices Act, 15 USC § 1692). The district court dismissed the federal law claim for failure to state a claim and declined to exercise supplemental jurisdiction over the remaining state-law claims. See Ames, 2014 WL 585653, at *5-6.

7

the judgment is not final as long as there is a right to appellate review.'"  Id. (emphasis removed) (quoting Greene v. Transp. Ins. Co., 169 Ga. App. 504, 506 (313 SE2d 761) (1984)).  See also id. (noting that "'Georgia is, apparently, among the minority of states that treat a lower court judgment on appeal as not final for purposes of collateral estoppel or res judicata'" (citation omitted)). The Eleventh Circuit then proceeded to consider the Ameses' claims against Chase and Aldridge on the merits and concluded that the Ameses "lack standing under Georgia law to challenge the assignment," citing Montgomery and Jurden. Ames, 623 Fed. Appx. at 986-987.

Thus, the Eleventh Circuit beat us to the punch on the question of the Ameses' standing.  The preclusive effect in state court of a federal court judgment like the Eleventh Circuit's is determined by federal common law.  See Semtek Intl. Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (121 SCt 1021, 149 LE2d 32) (2001).  See also CS-Lakeview At Gwinnett, Inc. v. Retail Dev. Partners, 268 Ga. App. 480, 483-484 (602 SE2d 140) (2004) (following Semtek).  If the federal decision was rendered under the court's federal question jurisdiction, the uniform federal rules of preclusion declared by the United States Supreme Court are applied.  See Taylor v. Sturgell, 553 U.S. 880, 891

8

(128 SCt 2161, 171 LE2d 155) (2008). If the federal decision was rendered under diversity jurisdiction, however, federal common law looks to the law of the state where the district court sits to determine the preclusive effect of the case, unless such state law is incompatible with federal interests in the case. See Semtek, 531 U.S. at 508-509.

The Ameses filed their case in federal court in Florida invoking both diversity and federal question jurisdiction; because the holding that we are considering decided claims clearly brought under diversity jurisdiction, we apply Florida preclusion law. Florida law is not incompatible with federal interests in this case; in fact, under either Florida or federal law, the Ameses are barred by issue preclusion from challenging the assignment of the security deed to Chase.

Florida law "bars relitigation of the same issues between the same parties in connection with a different cause of action." Topps v. State, 865 S2d 1253, 1255 (Fla. 2004). See also Taylor, 553 U.S. at 892 (applying similar federal law). In both the federal case and this state case, the Ameses sued Chase and Aldridge. In both cases they challenged the assignment to Chase of the security deed for the Alpharetta property. And the Eleventh Circuit clearly decided that

9

challenge, concluding that it cannot be raised by the Ameses because they lack standing. See Ames, 623 Fed. Appx. at 986-987. Although this Court is the ultimate arbiter of Georgia law, see In re Cassell, 688 F3d 1291, 1292 (11th Cir. 2012), the discrete issue of the *Ameses'* standing has already been litigated and decided against them.[4]

Relying on Georgia preclusion law, the Ameses argue that the Eleventh Circuit opinion is not yet final and thus cannot have preclusive effect. In fact, the Eleventh Circuit's judgment became final months ago, after certiorari was not sought and the mandate issued on September 11, 2015. And in any event, as we have just explained, Georgia preclusion law has no place in the analysis of the preclusive effect of a case filed – as the Ameses chose to file it – in a

---

[4] The Ameses argue that because their complaint in state court included claims of wrongful foreclosure and quiet title, while their complaint in federal court included requests for declaratory judgment, the cases involve different causes of action and thus the federal case cannot decide anything in the state case. This difference in claims might prevent *claim* preclusion (or res judicata in the more precise meaning of that term) from barring the Ameses, although we doubt it. While their state-court and federal-court causes of action bear different labels, they are based on the same essential facts and seek to prevent Chase from foreclosing. See The Florida Bar v. St. Louis, 967 S2d 108, 119 (Fla. 2007) ("The causes of action must be closely related for the doctrine of res judicata to apply."); Jaffree v. Wallace, 837 F2d 1461, 1468 (11th Cir. 1988) ("Res judicata, or 'claim preclusion,' 'extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same "operative nucleus of fact." '" (citation omitted)). See also Black's Law Dictionary 1054 (10th ed. 2014) (defining "res judicata" both as used to refer generally to preclusion by a prior judgment and more specifically to claim preclusion). Because the Ameses' challenge to the assignment is clearly stymied by issue preclusion, however, we need not decide if it is blocked by claim preclusion as well.

Florida federal court. Under Florida and federal law, a pending appeal does not deprive the lower court's judgment of its preclusive effect. See <u>Reese v. Damato</u>, 33 S 462, 464 (Fla. 1902); <u>Jaffree v. Wallace</u>, 837 F2d 1461, 1467 (11th Cir. 1988) ("'The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.'" (citation omitted)).

3. (a) Although the Eleventh Circuit's decision resolves the standing question against the Ameses, it does not – and cannot conclusively – answer that question for the many other debtors, secured creditors, and assignees of those security deeds that are affected by this legal issue. <u>Montgomery</u> and <u>Jurden</u>, the Court of Appeals's decisions relied on by that court in this case (and by the Eleventh Circuit) held that debtors do not have standing to challenge the assignment of their security deeds. See <u>Montgomery</u>, 321 Ga. App. at 346; <u>Jurden</u>, 330 Ga. App. at 180. But those holdings were not properly presented to this Court for review, as certiorari was not sought on the standing issue in <u>Montgomery</u> and the petition for certiorari in <u>Jurden</u> was dismissed as untimely. Before the Eleventh Circuit ruled, we had granted certiorari in this case to address the standing question, which is a matter of gravity and importance to the

11

public, see Supreme Court Rule 40, and we will proceed to decide it as an alternative ground for affirming the Court of Appeals. See Cassell, 688 F3d at 1301 ("A final resolution of how to apply this Georgia [law] is needed, and only the Georgia Supreme Court can provide one.").

(b)  The Ameses asked the superior court to determine that the initiation of non-judicial foreclosure proceedings by Chase was wrongful because the assignment of the security deed to Chase by WaMu's receiver (the FDIC) was flawed. To bring such a claim, the Ameses, like any other plaintiff debtors suing in tort (for wrongful foreclosure or the like) or in contract (for a breach of the security deed or the assignment), must establish standing to sue on the ground asserted, which requires showing an injury in fact that was caused by the breach of a duty owed by the defendants to the plaintiffs and that will be redressed by a favorable decision from the court. See, e.g., Thompson-El v. Bank of America, N.A., 327 Ga. App. 309, 310 (759 SE2d 49) (2014) (wrongful foreclosure action); Breus v. McGriff, 202 Ga. App. 216, 216 (413 SE2d 538) (1991) (contract action). See generally Granite State Outdoor Advertising, Inc. v. City of Roswell, 283 Ga. 417, 418-419 (658 SE2d 587) (2008) (discussing standing doctrine). The Ameses cannot show that they have met this standing

12

requirement with respect to their assignment claim.

(c) To begin with, the security deed affords the Ameses no right to dispute its assignment to a third party. A foreclosing creditor owes certain duties by statute and contract to the debtor, and the debtor may seek relief if those duties are breached. See, e.g., Calhoun First Nat. Bank v. Dickens, 264 Ga. 285, 285-286 (443 SE2d 837) (1994) ("Where a grantee does not comply with the statutory duty to exercise fairly the power of sale in a deed to secure debt, OCGA § 23-2-114, the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure." (citations omitted)); Thompson-El, 327 Ga. App. at 310 ("A lender owes a borrower a duty to exercise a power of sale in a security deed fairly, which includes complying with statutory and contractual notice requirements."). In making and receiving the assignment in dispute here, however, neither the original security deed holder (WaMu and its receiver, the FDIC) nor the alleged assignee (Chase) breached a duty owed to the Ameses under the law or the terms of the deed. To the contrary, Georgia statutory law expressly authorizes the assignment of security deeds. See OCGA § 44-14-64 (c) ("Transfer of a deed to secure debt and the indebtedness therein secured may be made in whole or in part . . . ."). And the

13

deed here explicitly conveyed the Ameses' property to WaMu and its "successors and assigns." WaMu's contractual right to assign the deed unilaterally is highlighted when compared to the provision of the deed that requires the Ameses to obtain WaMu's prior written consent before they can transfer their obligations.

(d) Nor can the Ameses show that the assignment itself granted them any basis for standing that the security deed did not. The assignment of a security deed is a contract between the deed holder and the assignee. See Bank of Cave Spring v. Gold Kist, Inc., 173 Ga. App. 679, 680 (327 SE2d 800) (1985). And a lawsuit on a contract generally may be brought only by a party to the contract or an intended third-party beneficiary of the contract. See OCGA § 9-2-20. The debtor normally is not a party to an assignment of the deed, and the Ameses clearly were not a party to the assignment at issue here.

The assignment of a security deed may affect the debtor in some ways (for example, the debtor may be required to direct its payments to or negotiate with a different entity), and the debtor may also be an intended third-party beneficiary of *certain* parts of the assignment (namely, the parts that transfer any rights and protections given to the debtor under the security deed). The typical

14

assignment does not, however, give the debtor any *new* rights, and the debtor can vindicate all of the rights it had (and continues to have) under the deed that has been transferred by suing the assignee that claims to have taken ownership of the deed and its corresponding obligations.[5]

What the debtor cannot do is dispute the assignment; that may normally be done only by the assignor, because the debtor is not a third-party beneficiary of the assignment *as a whole* and particularly is not intended to directly benefit from the transfer of the power of sale. "'[S]tatus as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit. To the contrary, 'a third party beneficiary . . . can only enforce those promises made directly for his benefit.'" Archer W. Contractors., Ltd. v. Estate of Pitts, 292 Ga. 219, 226-227 (735 SE2d 772) (2012) (citations omitted). The Ameses were plainly not intended third-party beneficiaries of the assignment at issue here.

The Ameses contend that the assignment to Chase was invalid because the power of attorney by which the FDIC granted Chase the authority to transfer

---

[5] Thus, the superior court in this case did not reject for lack of standing the Ameses' claims against Chase regarding notice of the planned foreclosure sale, but rather found those claims to be moot because the sale had been cancelled and alternatively denied them on the merits.

15

WaMu's real estate interests expired before the assignment recorded in September 2012 was executed. Thus, the Ameses maintain, WaMu's FDIC receiver remains the true holder of the security deed, with the authority to negotiate with the Ameses and to decide not to foreclose on the property – authority that Chase is supposedly undermining. The deed holder does have *discretion* as to whether and when to initiate a foreclosure, but it has no *duty* to forgo or delay foreclosure in favor of negotiating with the debtor. See OCGA § 44-14-162.2 (a) ("Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument."). More importantly, it is the deed holder's right to decide whether to challenge a purported assignment or dispute a foreclosure initiated by an alleged assignee.

If the Ameses believe that the assignment of their security deed to Chase was invalid and that Chase is therefore subverting the FDIC's discretion to decide whether to foreclose, then the Ameses should alert the FDIC to that concern so that the FDIC may intercede to assert any rights it believes it has. In a situation where, for example, the entity attempting to foreclose has no legitimate claim to the security deed, such as where the alleged assignment was

16

fraudulent, calling the foreclosure to the attention of the true deed holder would be expected to lead to remedial action by the true holder. But there is no evidence in this case that the FDIC has any concern about the assignment to Chase, and the Ameses cannot manufacture standing for themselves by asserting a claim that the party with standing has not asserted.[6]

(e) It is possible that a debtor could have standing to challenge the validity of an assignment indirectly, if an invalid assignment violated a statutory protection and thereby injured the debtor. Along these lines, the Ameses argue that Chase failed to comply with OCGA § 44-14-162.2 (a), which says:

> Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to

---

[6] We need not address in this case the situation where a plaintiff property owner alleges that she is no longer a debtor because the security deed has been cancelled, so legal title has reverted to the property owner and no one – not the original deed holder or any purported assignee – would have the power of sale. Cf. Johnson v. Bank of America, N.A., 333 Ga. App. 539, 539, 543 (773 SE2d 810) (2015) (reversing the dismissal of a quiet title suit where the petitioner alleged that the purportedly assigned security interest on his property had been relinquished before the assignments). The Ameses have not alleged that they do not remain subject to the security deed on their property; they seek only to dispute who holds that deed.

We also note that standing is a doctrine involving the *plaintiff's* right to sue for redress of injury. Thus, we do not address the situation in which an alleged assignee comes to court not as a defendant in a wrongful foreclosure or breach of contract case, but rather as a plaintiff seeking to enforce some aspect of the deed against the debtor, where the plaintiff may need to establish its standing to sue on the contract. See OCGA § 9-2-20; LSREF2 Baron, LLC v. Alexander SRP Apts., LLC, 17 F.Supp3d 1289, 1306 (N.D. Ga. 2014). By establishing a non-judicial foreclosure process, however, the General Assembly has chosen to allow secured creditors to foreclose without ever going to court. See Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law, § 8:1 (updated Oct. 2014).

the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery. . . .

Although Chase gave the Ameses notice of the planned foreclosure sale as the statute requires, they contend that they did not receive notice from the "secured creditor" because the allegedly invalid assignment means that Chase is not the secured creditor with regard to their security deed.

The statute, however, does not require the party giving notice to prove that it is the secured creditor. On the contrary, the party sending the notice does not have to be a creditor at all, so long as it has been authorized by the secured creditor. See Carr v. U.S. Bank, NA, 539 Fed. Appx. 926, 929 (11th Cir. 2013) ("An entity with authority to act on behalf of the secured creditor may send the relevant notice [under OCGA § 44-14-162.2 (a)]. Further, the notice did not need to reflect that [the sending law firm] had the authority to send the notice on behalf of the secured creditor." (citation omitted)). Indeed, OCGA § 44-14-162.2 does not even require that the secured creditor be identified in the notice; it requires only that the notice identify the individual or entity with the authority

18

to negotiate and amend or modify the terms of the mortgage. That individual or entity may be the holder of the security deed, or the note holder, or an attorney or servicing agent. See You v. JP Morgan Chase Bank, 293 Ga. 67, 74-75 (743 SE2d 428) (2013). See also Reese v. Provident Funding Assoc., 327 Ga. App. 266, 267-268 (758 SE2d 329) (2014). Because § 44-14-162.2 (a) does not require notice to the debtor of who the current security deed holder is, the statute cannot provide a mechanism for the debtor to assert claims that the (potentially unnamed) secured creditor does not actually have a validly assigned deed.[7]

For these reasons, we conclude that the Court of Appeals correctly held that the Ameses lack standing to challenge the assignment of the security deed

---

[7] The legislature has indicated its desire to ensure that only the record holders of deeds initiate foreclosure proceedings. OCGA § 44-14-162 (b) requires that "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located," and the stated legislative purpose of this provision is to "require a foreclosure to be conducted by the current owner or holder of the mortgage, as reflected by public records," Ga. L. 2008, p. 624, § 1. Because Chase recorded its assignment as required and the Ameses have not brought a distinct challenge under this statute, we need not decide whether § 44-14-162 (b) could ever provide a debtor with standing to challenge a foreclosure based on an unrecorded or facially invalid assignment. See Duke Galish LLC v. SouthCrest Bank, 314 Ga. App. 801, 803 (726 SE2d 54) (2012) (leaving open the question of whether a failure to comply with § 44-14-162 (b) rendered the sale void or voidable). See also United States Bank Nat. Assn. v. Gordon, 289 Ga. 12, 13, 16 (709 SE2d 258) (2011) (holding that a facially defective deed is not duly recorded and does not provide constructive notice, but a latently defective deed may be admitted to record). But see Haynes v. McCalla Ramyer, LLC, 793 F3d 1246, 1252-1253 (11th Cir. 2015) (holding that debtors lacked standing to challenge an assignment using OCGA § 44-14-162 (b) on the ground that the assignment was not properly attested).

to Chase.[8]

Judgment affirmed.  All the Justices concur.

---

[8]  Courts applying the law of other jurisdictions have answered the standing question in different ways.  Although it appears that all courts have held that plaintiff debtors lack standing to challenge a *voidable* assignment of the security instrument, some courts have indicated – consistent with our conclusion – that plaintiff debtors always lack standing to challenge an assignment when they have failed to prove an injury from the assignment, see, e.g., Quale v. Aurora Loan Servs., LLC, 561 Fed. Appx. 582, 583 (8th Cir. 2014), while others have held or suggested that there is debtor standing to challenge a assignment that is truly *void*, see, e.g., Culhane v. Aurora Loan Services of Nebraska, 708 F3d 282, 291 (1st Cir. 2013); Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 Fed. Appx. 97, 102 (6th Cir. 2010).  Among the courts allowing void assignment claims by plaintiff debtors, there is disagreement about what constitutes a void rather than voidable assignment, compare U.S. Bank Nat. Assn. v. Salvacion, 338 P3d 1185, 1190-1191 (Haw.  Ct. App. 2014), with In re Saldivar, Case No. 11-10689, 2013 WL 2452699, at *4 (Bankr. S.D. Tex. June 5, 2013), and at least one court has limited void assignment claims to post-foreclosure proceedings, see Yvanova v. New Century Mtg. Corp., Case No. S218973, ___ P3d ___, 2016 WL 639526, at *1 (Cal. Feb. 18, 2016).  We have reached our decision based on the law of Georgia.