[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13847

Non-Argument Calendar

_____

RICHARD DURHAM,

Plaintiff-Appellant,

*versus*

AERIAL FUNDING, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-04035-TCB

_____

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Richard Durham appeals from the district court's dismissal of his complaint against Aerial Funding, LLC ("Aerial Funding"). After Aerial Funding foreclosed on Durham's property, Durham asserted various claims against Aerial Funding in connection with the foreclosure. The district court dismissed Durham's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). After careful review, we affirm the district court's order.

## I.    BACKGROUND

### A. Alleged Facts

In 2006, Durham financed the purchase of his home in Hall County, Georgia, through a mortgage loan from IndyMac Bank, F.S.B. ("IndyMac").[1] The mortgage loan was secured by a first-position security deed on Durham's home.

---

[1] This is an appeal from an order dismissing Durham's amended complaint under Federal Rule of Civil Procedure 12(b)(6). We therefore accept the complaint's factual allegations "as true and constru[e] them in the light most favorable to" Durham. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). But we do not accept as true allegations that contradict an exhibit to the amended complaint. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

In 2007, Durham executed a home equity line-of-credit agreement (the "HELOC") with IndyMac.  Under the HELOC, IndyMac extended a line of credit to Durham "in the amount of $108,500.00 due and payable in full on March 15, 2027," which was secured by a second-position security deed on Durham's home (the "Junior Security Deed").  The Junior Security Deed included a "power of sale" if Durham defaulted on the HELOC.

In 2008, IndyMac "failed . . . and was taken over by" the Federal Deposit Insurance Corporation ("FDIC").  "IndyMac was later reconstituted as a division of OneWest Bank."  OneWest Bank thereby became the loan servicer for Durham's mortgage loan and for his HELOC.

In 2012, Durham was unable to make the payments he owed for his mortgage loan and HELOC.  Representatives of OneWest Bank suggested that he seek a modification of his mortgage loan and of his HELOC, and they told Durham that he could modify both loans by including both loan numbers on a "Borrower Response Package."  Based on this advice, Durham completed the Borrower Response Package, listing the mortgage loan number on the line, "Loan I.D. Number," and listing the information for the HELOC under, "Additional Liens/Mortgages or Judgments on this Property."

In 2013, Durham signed and transmitted to OneWest Bank a loan modification agreement (the "Modification Agreement"). According to Durham, around this time he owed $350,060 for his mortgage loan, and the Modification Agreement included an

additional $51,567.60, which "represented good and valuable consideration [for] the extinguishment of the HELOC." "On information and belief," Durham alleged that OneWest Bank later "extinguished[] and marked the HELOC as being canceled and/or satisfied," even though the Junior Security Deed was never canceled.

But the Modification Agreement, itself, did not reference the HELOC. By its plain language, the Modification Agreement only "amend[ed] and supplement[ed] . . . the Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument'), and Timely Payment Rewards Rider, if any, dated 1/24/2006 and recorded on 2/9/2006 . . . and the Note, bearing the same date as, and secured by, the Security Instrument . . . ." The Modification Agreement also stated that the amount Durham owed for his mortgage loan was "$401,717.60 consisting of the unpaid amount(s) loaned to [Durham] by [the] [l]ender plus any interest and other amounts capitalized." And only "the following terms and provisions [were] forever canceled, null and void" under the Modification Agreement:

> (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction . . . . By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

After he executed the Modification Agreement, Durham stopped making payments in connection with the HELOC, but he made payments in connection with the Modification Agreement. According to Durham, around that time he also stopped receiving "statements, bills, loan coupons, or any other document[s] regarding the HELOC," and, for more than eight years, "[n]o collection efforts were made regarding the HELOC."

In 2014, the FDIC assigned the Junior Security Deed to another bank, which was identified as the trustee for "the IndyMac Residential Asset-Backed Trust." According to Durham, no value was given in consideration for the assignment, and the FDIC lacked the power to transfer rights in the HELOC.

In 2020, following additional assignments of the Junior Security Deed and of the "Secure Debt," the Junior Security Deed was assigned to Aerial Funding. Soon after, Aerial Funding sought to foreclose on Durham's property. But, according to Durham, the assignments in Aerial Funding's "chain of assignments" were invalid under Georgia's Uniform Commercial Code.

## B. Procedural Background

In his initial complaint filed in Georgia state court, Durham sought a temporary restraining order barring Aerial Funding from taking further foreclosure-related actions, among other relief. Aerial Funding removed Durham's suit to the federal district court based on diversity jurisdiction. And Durham moved for a temporary restraining order in the district court.

The district court denied Durham's motion, and Aerial Funding foreclosed on Durham's property in October 2020. Durham then filed an amended complaint and attached the Modification Agreement as an exhibit.

In his amended complaint, Durham asserted claims for: (1) wrongful foreclosure; (2) breach of contract; (3) declaratory judgment; (4) conventional *quia timet*; (5) bad-faith litigation expenses; (6) prejudgment interest; and (7) nominal damages. As to his claim for wrongful disclosure, Durham alleged that Aerial Funding "cannot provide proof of an unbroken chain of written security agreements putting it in contractual privity with the original contracting party" or its successors and that "[w]ithout a proper 'transfer and assignment of' the HELOC, Aerial was not authorized" to foreclose on his property. As to his claim for breach of contract, Durham asserted that Aerial Funding was bound by the Modification Agreement, which constituted a "'quasi new agreement[,]' by dint of the parties' mutual deviation from [the HELOC's] written terms and of their subsequent acceptance of payments," which, Durham claimed, extinguished the HELOC. Durham incorporated by reference, and relied on, his allegations

concerning wrongful foreclosure and breach of contract to support his other claims.

Aerial Funding moved to dismiss Durham's amended complaint under Rule 12(b)(6) for failure to state a claim. Then, on June 8, 2021, the district court granted Aerial Funding's motion.

As to Durham's wrongful foreclosure claim, the district court held that Durham lacked standing to challenge the validity of the assignment to Aerial Funding and that Georgia's Uniform Commercial Code did not apply to the assignment of the Junior Security Deed. As to Durham's claim that Aerial Funding breached the Modification Agreement, the district court found that Durham's allegations were dependent on oral representations and, under Georgia's statute of frauds, the alleged modifications had to be in writing. As to Durham's remaining claims, the district court held that because Durham failed to plausibly allege his wrongful foreclosure and breach of contract claims, he failed to plausibly allege that Aerial Funding lacked the ability to foreclose, or that Aerial Funding wrongfully foreclosed, on his property.

Durham moved for reconsideration of the district court's order and argued that, in dismissing his wrongful foreclosure claim, the district court misapplied Georgia's Uniform Commercial Code. The district court found that Durham was "simply repackaging his

prior arguments" and denied Durham's motion. This appeal followed.[2]

## II.    STANDARD OF REVIEW

We review *de novo* an order dismissing a complaint under Rule 12(b)(6), accepting all well-pleaded allegations as true and construing the allegations in the light most favorable to the plaintiff. *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1312 (11th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    ANALYSIS

On appeal, Durham asserts that the district court erred because he plausibly alleged that: (1) the assignment of the HELOC to Aerial Funding was invalid; and (2) Aerial Funding was bound by the Modification Agreement, which, together with the oral

---

[2] Durham appealed both the dismissal order and the order denying his motion for reconsideration. But on appeal Durham has made no arguments related to the order denying his motion for reconsideration. And as the district court correctly noted, Durham's motion for reconsideration reasserted the same arguments he made in connection with his wrongful foreclosure claim. We therefore do not separately address the district court's order denying Durham's motion for reconsideration.

representations and post-execution conduct surrounding that agreement, formed a quasi-new agreement that either merged or suspended the HELOC. While Durham does not tailor these arguments to the specific claims he asserted against Aerial Funding, it is clear, based on his amended complaint, that his argument concerning the validity of the assignment to Aerial Funding corresponds to his wrongful foreclosure claim and that his argument concerning a quasi-new agreement corresponds to his breach of contract claim.[3] We consider Durham's arguments in turn.

## A.  Wrongful Foreclosure Due to Invalid Assignment

Durham asserts that Aerial Funding lacked the authority to foreclose on his property because the assignment and transfer of the HELOC, and therefore the assignment of the Junior Security Deed, were invalid. In so doing, Durham argues that the district court erred in finding that he lacked standing to challenge the validity of the assignment to Aerial Funding and that the district court applied the wrong section of Georgia's Uniform Commercial Code to his claim.

---

[3] Durham does argue that if the district court erred in dismissing his wrongful foreclosure and breach of contract claims, the district court also erred in dismissing his other claims. Because we conclude that the district court did not err in dismissing Durham's claims for wrongful foreclosure or breach of contract, and Durham concedes that his other claims are dependent on his wrongful foreclosure or breach of contract claims, the district court did not err in dismissing Durham's other claims.

We begin with the threshold issue of standing, which is dispositive here. *See Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1342 (11th Cir. 2011); *Rondowsky v. Beard*, 835 S.E.2d 28, 33 (Ga. Ct. App. 2019). Under Georgia law, "a lawsuit on a contract generally may be brought only by a party to the contract or an intended third-party beneficiary of the contract." *Ames v. JP Morgan Chase Bank, N.A.*, 783 S.E.2d 614, 620 (Ga. 2016) (citing O.C.G.A. § 9-2-20). And in a case analogous to the one at hand, the Georgia Supreme Court held that the plaintiffs lacked standing to challenge a defendant's ability to foreclose on a property based on an allegedly invalid assignment of the security deed. *See id.* at 616.

In *Ames*, the plaintiffs asserted that the defendant was unable to foreclose on their property because "the assignment of the security deed was invalid." *Id.* at 617. The Georgia Supreme Court held that because the plaintiffs "were not a party to the assignment at issue" and "were plainly not intended third-party beneficiaries of the assignment at issue," they "lack[ed] standing to challenge the assignment of the security deed." *Id.* at 620, 622. As to whether the plaintiffs were intended third-party beneficiaries of the assignment, the Georgia Supreme Court found that the plaintiffs were "not intended to directly benefit from the transfer of the power of sale." *Id.* at 620. The Georgia Supreme Court also stated that "[i]n a situation where . . . the entity attempting to foreclose has no legitimate claim to the security deed, such as where the alleged assignment was fraudulent, calling the foreclosure to the attention of the true deed holder would be expected to lead to remedial action

by the true holder." *Id.* at 621.  The Georgia Supreme Court concluded that if the plaintiffs "believe[d] that the assignment of their security deed . . . was invalid," they could notify the true deed holder, but they could not "manufacture standing for themselves by asserting a claim that the party with standing has not asserted." *Id.* at 620–21.

Durham tries to distinguish *Ames* by arguing that the loan at issue in *Ames* was evidenced by a negotiable instrument, while Durham's challenge is based on an underlying nonnegotiable instrument, the HELOC.[4]  But ultimately, Durham is challenging Aerial Funding's ability to foreclose on his property based on the assignments through which a third-party "transfer[red] . . . the power of sale" to Aerial Funding.  *Id.* at 620.  And like the plaintiffs in *Ames*, Durham has failed to allege that he was "a party to" the assignments or that he was an "intended third-party beneficiar[y] of the assignment[s] at issue"—i.e., that he was "intended to directly benefit from [any of] the transfer[s] of the power of sale." *Id.*

Therefore, if Durham believes that another party is the "true holder" of the ability to foreclose on his property, he can alert that party.  *See id.* at 621.  But Durham lacks standing to challenge the validity of the assignments to Aerial Funding, and he cannot

---

[4] Specifically, Durham is challenging the validity of the assignment of the Junior Security Deed to Aerial Funding based on the validity of the assignment of the HELOC under Article 9 of Georgia's Uniform Commercial Code.

maintain a suit "for wrongful foreclosure or the like" based on the validity of those assignments.[5] *See id.* at 619–22.

## B.  Breach of Quasi-New Agreement

Durham also asserts that the terms of the Modification Agreement between Durham, along with the conduct surrounding the execution of that agreement, reflect a quasi-new agreement between Durham and OneWest Bank that "merged" or "suspended the operation of the HELOC." According to Durham, Aerial Funding was bound by that quasi-new agreement and therefore could not foreclose on the extinguished HELOC.

Under Georgia law, "[t]he parties to a contract, even a contract subject to the Statute of Frauds, may mutually depart from its terms and form a 'quasi-new agreement.'" *280 Partners, LLC v. Bank of N. Ga.*, 835 S.E.2d 377, 382 (Ga. Ct. App. 2019). But, to establish a quasi-new agreement, "there must be some consideration for that new agreement."[6] *Id.*; *accord Turem v. Sinowski &*

---

[5] In *Ames*, the Georgia Supreme Court left open the possibility that O.G.C.A. § 44-14-162(b), which requires that "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale," may "provide a debtor with standing to challenge a foreclosure based on an unrecorded or facially invalid assignment." 783 S.E.2d at 622 n.7. But like the plaintiffs in *Ames*, Durham has "not brought a distinct challenge under this statute." *Id.*

[6] To form a quasi-new agreement under Georgia law, there must also "be more than a simple breach on the part of one of the parties; there must be a mutual departure." *Crawford v. First Nat'l Bank of Rome*, 223 S.E.2d 488, 490 (Ga. Ct. App. 1976). But because we conclude that Durham failed to allege

*Jones*, 395 S.E.2d 60, 61 (Ga. Ct. App. 1990) (explaining that a quasi-new agreement must be "founded on . . . sufficient consideration").

Turning to Durham's allegations, Durham alleged that OneWest Bank represented that both loans would be modified and that, around the time the Modification Agreement was executed, "the balance due on [his mortgage loan] was $350,060" and that the Modification Agreement's "addition of $51,567.60 to the principal balance of the [mortgage loan] represented good and valuable consideration [for] the extinguishment of the HELOC." In other words, Durham alleged that, consistent with OneWest Bank's oral representations that the Modification Agreement would incorporate both loans, the $401,717.60 he owed under the Modification Agreement reflected consideration for both the mortgage loan and the HELOC. While we must accept as true all of Durham's well-pleaded allegations, *Davidson*, 797 F.3d at 1312, when an exhibit attached to the complaint "contradict[s] the general and conclusory allegations of the pleading, the exhibit[] govern[s]," *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

---

that the quasi-new agreement was supported by consideration, we need not address whether he has sufficiently alleged conduct demonstrating a mutual departure. *Cf. 280 Partners*, 835 S.E.2d at 382 (holding that the defendants' "mutual departure defense" failed because, "[a]lthough the defendants pointed to evidence that the bank departed from the terms of the April 2013 note . . . , they did not point to evidence that any consideration was paid or received under this alleged departure.").

Durham attached the Modification Agreement to his amended complaint, and therefore we must treat the Modification Agreement as "part of the pleading 'for all purposes.'" *Id.* at 1205 (quoting Fed. R. Civ. P. 10(c)). Under Georgia law, "[i]t is well-established that no construction of a contract is required or is even permissible when the language used by the parties is plain, unambiguous and capable of only one reasonable interpretation." *Griffin v. Adams*, 334 S.E.2d 42, 44 (Ga. Ct. App. 1985). Thus, "[w]here the terms of a written contract are clear and unambiguous, the court will look to it, and it alone, to determine the intention of the parties." *Id.* By its plain language, the Modification Agreement is specific to Durham's mortgage loan. Indeed, the Modification Agreement does not even reference the HELOC, let alone merge or suspend it. And as the district court correctly held, oral representations that the Modification Agreement incorporated and impacted the HELOC are irrelevant under Georgia's statute of frauds. *See* O.C.G.A. § 13-5-30(a)(7), (b) (stating that "[a]ny agreement to modify, alter, cancel, repeal, revoke, release, or rescind" a commitment to lend money "must be in writing and signed by all parties to such agreement").

Looking at the terms of the Modification Agreement alone—i.e., without crediting Durham's allegations that OneWest Bank orally represented that the Modification Agreement would incorporate both loans and his allegations interpreting the terms of the Modification Agreement—the $401,717.60 in that agreement represents the debt Durham owed exclusively for his mortgage

loan.[7] Contrary to Durham's allegations, the Modification Agreement's reference to $51,657.60 represents the amount of Durham's $401,717.60 mortgage debt that is "deferred," meaning that Durham is not required to "pay interest or make monthly payments" for this amount of the mortgage debt.

The $51,657.60 deferred mortgage debt is the only consideration Durham alleged in connection with the quasi-new agreement to merge or suspend the HELOC. But according to the plain language of the Modification Agreement, that $51,657.60 was not consideration for merging or suspending the HELOC. Because Durham's allegations concerning the Modification Agreement's inclusion of the HELOC conflict with its plain language, we cannot "credit [his] allegations." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); *accord Griffin Indus.*, 496 F.3d at 1206. And by failing to plausibly allege that he gave consideration in exchange for a quasi-new agreement, Durham has failed to plausibly allege the existence of a quasi-new agreement that departed from, and merged or suspended, the HELOC. *See Mbigi v. Wells Fargo Home Mortg.*, 785 S.E.2d 8, 16 (Ga. Ct. App. 2016) (finding that

---

[7] In dismissing Durham's breach of contract claim, based on his reliance on oral representations, the district court did not elaborate on the effect of the Modification Agreement's plain language. We may nevertheless consider the effect of the Modification Agreement's plain language here. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) ("[T]his Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court.").

plaintiff failed to sufficiently allege a "quasi-contract" because "there could be no departure from the terms of the contract" in the absence of allegations supporting consideration).[8]

## IV.    CONCLUSION

For all these reasons, we affirm the district court's order dismissing Durham's complaint.

AFFIRMED.

---

[8] On appeal, Durham also suggests that his quasi-new agreement theory could support a claim for wrongful foreclosure. Notwithstanding that, in his amended complaint, Durham's claim for wrongful foreclosure was specific to the validity of the assignments to Aerial Funding, a wrongful foreclosure claim premised on his quasi-new agreement theory would similarly fail for lack of consideration. *See Mbigi*, 785 S.E.2d at 16 (determining that "[t]he trial court did not err in concluding that . . . [plaintiff's] assertion that the parties to the loan had entered into a 'quasi-contract' did not state any basis for a wrongful foreclosure claim" when the plaintiff failed to allege that the quasi-contract was supported by consideration).