## MOODY *v.* THE STATE.

1. One who wilfully and maliciously mutilates a trespass notice which a land owner has posted on his land, so as to materially injure the same, is guilty of malicious mischief, under section 729 of the Penal Code, although at the time he does so the land may not be registered in "the registry for posting lands," as required by the act of August 15, 1903 (Acts 1903, p. 44).
2. The evidence was sufficient to support the verdict.

Submitted December 17, 1906.—Decided March 1, 1907.

Indictment for misdemeanor.    Before Judge Kimsey.    White superior court.    October 17, 1906.

*J. W. H. Underwood,* for plaintiff in error, cited: Acts 1903, p. 44; Penal Code, §729; 115 *Ga.* 234; 13 Enc. Pl. & Pr. 406, note; 19 Am. & Eng. Enc. L. (1st ed.) 284, note; 4 McLean, 603; 73 *Ga.* 41.

*W. A. Charters, solicitor-general,* contra, cited: 73 *Ga.* 41; 110 *Ga.* 293; 13 Enc. Pl. & Pr. 414; 19 Am. & Eng. Enc. L. 638; 2 Bl. Com. 2; 175 U. S. 421; 106 Mass. 406.

Совв, P. J.    Moody was tried for the offense of malicious mischief, and convicted.    He was tried under an indictment which

charged that he did "wilfully and maliciously injure and destroy a certain trespass notice of the property of Ben. H. Allison which was then and there attached to and tacked on a telephone post on the land of said Ben. H. Allison, by then and there shooting into and through said trespass notice with a certain gun, thereby mutilating said trespass notice, contrary to the laws of said State," etc. He made a motion for a new trial, which was overruled, and he excepted.

1, 2. The motion for a new trial contained only the usual general grounds, so that the only question to be considered is whether the evidence was sufficient to support the verdict. Unless there is merit in some one or more of the following contentions of counsel for plaintiff in error, the evidence amply supported the verdict. These contentions are: (1) "That there is no evidence that the prosecutor had ever registered his land in the clerk's office as required by law, and that, therefore, there was no evidence that his land was legally posted, and the notice can not be termed a 'trespass notice;' that it was of no value, and the defendant could not be convicted." (2) That if "the land was posted and properly registered in the clerk's office, then the injuring or destroying of the 'trespass notice' . . ' would not affect the posting of the land;" that "the thing, being of no value, . . is not property and there can be no material and substantial injury to the same." (3) That the notice, being "on a telephone pole, . . could not, therefore, be on the land of the prosecutor, as the telephone company must have and did own the line and pole and the right of way with the same." In support of contentions numbered 1 and 2, counsel cite the act of August 15, 1903 (Acts 1903, p. 44). From an examination of that act it will be seen that in order for a landowner to avail himself of its provisions, he must "post a notice in two or more places on each tract of land, forbidding all persons to hunt thereon or fish in the streams," etc., thereof; and that, after this has been done, he must register his name in a book to be kept by the clerk of the superior court, and known as "the register for posting lands," and the registered name must be accompanied by a description of the posted lands. The act makes the posting of the trespass notices on the land a condition precedent to the registering of the land, and no time is prescribed within which the registering shall take place after the

posting. While, under the provisions of the act, it takes both the posting of the notices and the registering of the landowner's name in the book to constitute "a legal notice" to all persons that the landowner has lawfully forbidden hunting and fishing on his land, it is clear that the "trespass notices," as they are popularly called, not only can be, but must be, in existence, and posted, before the "legal notice," which arises from a combination of the act of posting the notices on the land and the subsequent act of registering the land, can be held to exist. The trespass notices must precede the registering of the land, and without them no registering can take place. Counsel fail to draw the distinction between the intangible, ideal thing, called by the act "a legal notice," which arises, by operation of law, from the performance of two prescribed acts, and the real, substantial thing, called in common parlance "a trespass notice." The accused was not indicted for shooting and mutilating an idea,—this would be an absurdity,—but for shooting and mutilating the material thing described as "a trespass notice," just as if he had been indicted for wilfully and maliciously mutilating a Bible, or a dictionary, belonging to the prosecutor. It is drawing too fine-spun a distinction to say that a piece of board, metal, cloth or paper, whereon is written or printed a prescribed warning to trespassers, which is posted on a man's land, can not be described in an indictment as "a trespass notice," because another step necessary in order to legally warn trespassers has not been taken. With as much reason it might be contended that it could not be described as "a trespass notice" unless it appeared that another similar notice was posted on the land; as the statute requires two notices to be posted.

The accused was indicted under the general section of the Penal Code upon the subject of malicious mischief (§729). That section reads as follows: "All other acts of willful and malicious mischief, in the injuring or destroying any public or private property not herein enumerated, shall be misdemeanors." It is contended, as we have seen, that the trespass notice which the accused, as the evidence showed, mutilated and partially destroyed was not property, the argument being that it had no value, and that a thing which has no value can not be property. In a prosecution for malicious mischief it is generally unnecessary to allege the value of the thing injured or destroyed. 13 Enc. Pl. & Pr. 414, and cases

cited. Nor is it necessary to allege the amount of damage suffered by the owner. *Harris* v. *State,* *73 Ga.* 41. And, of course, it was, therefore, not necessary to prove value or amount of damage sustained by the owner. It does not appear from the evidence upon what material the language employed in giving the notice appeared, nor whether the words used were written, printed, or painted thereon. But it is clear that the material or substance upon which the trespass warning appeared was something apart from the telephone pole to which it was attached; for it was "attached to and tacked on" the pole. It matters not whether it was metal, cloth, paper, or some other material, it was something which could be used for a useful purpose, and over which a person could exercise the right of dominion and ownership; and the mere substance itself had some value, however insignificant it may have been. It was property in the concrete sense. Besides, we think that a landowner who has taken the first step required by statute toward legally forbidding all persons from hunting and fishing on his land, by posting thereon the requisite notices, must have a property right in the notices which he has posted. Otherwise they could with impunity be destroyed, or torn down and carried off, by any malicious person who chose to do so. They are valuable to the owner, whether they would be valuable to any one else or not. They are valuable to him, not only as mute witnesses to all passers-by, who see and read them, that he has complied with the law as to the posting of his land, so that if any question should arise upon this point in the future, he may obtain the testimony of disinterested persons to support his claim that the notices were duly posted, but also as warnings to those who might otherwise trespass upon his land, by hunting or fishing thereon. For, although the warning is not legally complete until the land has been registered as the statute requires, and is then legally complete even if the notices have, without the landowner's consent, been defaced or destroyed before the act of registry has taken place, yet the presence of the notices in conspicuous places on the land has a tendency to deter all but those who are reckless and careless of the consequences to themselves of their acts from committing the trespasses which the owner seeks to prevent.

Many and varied have been the definitions which courts have given to the word "property," as used in constitutions and stat-

utes, according to the connection in which it has been used. We are not concerned with the word here in its primary legal sense of ownership; that is, the exclusive right of possessing, enjoying, and disposing of a thing, but only with it in its secondary sense of the thing over which acts of ownership may be exercised. In this latter sense we think that anything to which a person may hold a legal title is property, whether it has any market value or not. It may have intrinsic value, but no exchangeable value. It may serve a useful purpose and yet be unsalable and unexchangeable. No one may want it, or have a use for it, except he who possesses it, and yet to him it may be a thing of value, that is, of intrinsic value, something that can be utilized in the accomplishment of his purposes or the attainment of his desires. What do we mean when we say that a particular, visible, tangible thing is the property of a designated person? Do we necessarily mean that it is something which he can sell in the market or exchange for something else? We do not think so. May not even an old letter, a faded photograph, or a lock of hair, treasured because of the associations and memories which the mere sight of it invokes, be the property of the person who possesses, treasures, and cherishes it, although no one else would care to possess it or give anything whatever in exchange for it? And if it should be wilfully and maliciously destroyed by another person, will he not be guilty of malicious mischief? Does the statute in question recognize nothing as property except something which has a value that can be measured in dollars or cents? We do not so understand it. At any rate, we are clearly of opinion that the trespass notice involved in this case was property, within the meaning of the statute.

The contention that as the trespass notice was on a telephone pole "it could not, therefore, have been on the land of the prosecutor, as the telephone company must have . . owned the line and pole and the right of way with the same," is without merit. The prosecutor testified that the notice was his property and was on his land; and there was no evidence to the contrary. From the evidence, therefore, the telephone pole must have been on his land; and there is nothing in the evidence to show that it was not his pole. The evidence fails to show the existence of a telephone company, or even a telephone line. If there was a telephone line over the prosecutor's land, he may, so far as the evidence shows,

have owned it himself; and if he did not, he may have had the permission of the owner of the line and pole to post this notice thereon. But we must deal with the evidence as it stands, and not in mere conjectures drawn therefrom; and, in our opinion, it was amply sufficient to support the verdict rendered.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*