### LONG *v.* McINTOSH *et al.*

1. Trover may be maintained by the maker of a negotiable promissory note against the payee, after the same is fully paid, if the payee, having the note in his possession, refuses to deliver it to the maker upon demand, or if, after payment, the payee disposes of the note.

2. Where a suit was brought by the makers of a promissory note against

the payee and his agent, to recover possession of it, on the ground that it had been fully paid and its possession had been refused on demand, it furnished no ground for an equitable proceeding on behalf of the payee that he denied the full payment of the note, and that he could not obtain judgment on it in the trover suit, or that the city court in which that suit had been brought had no equitable jurisdiction.

Argued June 12,—Decided December 20, 1907.

Petition for injunction. Before Judge Holden. Elbert superior court. March 11, 1907.

R. E. Hudgins and James McIntosh brought an action of trover in the city court of Elberton, against the Bank of Elberton, J. H. Blackwell, H. B. Hunter, and N. G. Long, seeking to recover a certain promissory note, alleged to be of the value of $2,890.03. The plaintiffs alleged, that the note was made by them payable to the order of N. G. Long, and was deposited by him with the Bank of Elberton as his agent, for the purpose of collecting the amount of it from them; that it had been paid off; that Hunter and Blackwell were officers of the bank, and in that capacity and as individuals refused to deliver up the note; that the defendants were all citizens of Elberton; and that they colluded and conspired to hold the note from the plaintiffs, to their damage in the sum of $2,890.03. The copy note attached to the petition was dated February 6, 1895, due December 1 after date, payable to the order of N. G. Long, for the principal sum of $1,323.37, with interest at eight per cent. per annum. It was signed by Hudgins and McIntosh, and indorsed by the Elberton Loan and Savings Bank and N. G. Long. Long answered the action of trover, admitting that the note had been placed with the Bank of Elberton for collection, but denying that it had been paid, or that the plaintiffs were entitled to its possession. He alleged that the note was his property, and not that of the plaintiffs. The other defendants answered that the Bank of Elberton had received the note from Long for collection, but denied any collusion or conspiracy. They could not say whether or not the note had been paid to Long prior to its delivery to the bank for collection.

Long filed his equitable petition, seeking to have the action of trover enjoined. He alleged, in brief, as follows: He is the owner of the note in controversy. It was transmitted in the regular course of business to the bank for collection. The bank and its officers have no interest in the note or its proceeds. It was long

past due and unpaid, and the principal and accumulated interest due to Long amounted to $2,890.03. McIntosh and Hudgins brought the trover suit above referred to, and made an affidavit in order to obtain bail process. The city court of Elberton has no jurisdiction to adjudicate and determine the issues arising out of the bail and trover proceeding, for the reason that the plaintiff is a bona fide owner and holder of the note, and in that suit he can not have a judgment upon it. If the allegations of the plaintiffs in the trover case were true, the note would have no value at all except as a mere paper. It is past due, and any person taking it would receive it with notice of dishonor, and subject to any defenses which the makers might have to a suit upon it. In a trover suit the plaintiff has a right to elect an alternative verdict, a money verdict for the value of the property, or a verdict for the return of the property; and if the plaintiffs in that case should be allowed to take a money verdict against any of the defendants therein, it might result in irreparable wrong. An action of trover is not the proper remedy, but the proper proceeding would be by an equitable action to compel the delivery and cancellation of the note. The city court of Elberton has no equitable jurisdiction. No judgment on the note in favor of this plaintiff can be rendered in the trover case, and a multiplicity of litigation will result. It was prayed that further prosecution of the trover suit should be enjoined, and that the petitioner should have judgment against Hudgins and McIntosh jointly and severally in the sum of $2,890.-03. The defendants substantially denied the allegations of the equitable petition. On the hearing of the application for injunction it was denied, and Long excepted.

*Samuel L. Olive* and *J. E. & L. F. McClelland,* for plaintiff. *Joseph N. Worley,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

The controlling question in this case is whether the maker of a negotiable promissory note past due can bring an action of trover against the payee to recover possession of it, on the ground that it has been paid in full, and that delivery of it has been refused on demand. It requires no argument or citation of authorities to establish the general proposition that promissory notes, bills, and bonds are personal property, which may be the subject of conversion, and for which an action of trover will lie. If a note should

be stolen from its owner, or if it should be placed with another for a particular purpose and should be wrongfully converted, it will not be denied that an action of trover could be brought to recover it. But it is contended, that, after it has matured and been paid, it ceases to have any value except as a mere piece of paper, and that its possession can not be recovered from the holder by a trover suit. The general commercial practice has long been to require the delivery of a note to the maker when he pays it in full. It has been declared that the holder of a negotiable promissory note is not entitled to demand payment without delivering up such note, at least where it is payable to bearer, or to order and indorsed. Such appears to be the rule in England. In America the authorities are not all agreed on the point. In England it has been held in some cases that no recovery can be had at law upon such a negotiable instrument, alleged to be lost or destroyed, the title to which might pass by delivery; but that relief must be sought in equity, which in granting it could require a proper indemnity. Story on Promissory Notes (6th ed.), §§106-111. The contention that trover will not lie for a promissory note after payment is based on the idea that it is no longer of value. This, we think, is not sound in principle. Before payment the note is the evidence of indebtedness. If it is lost or destroyed by accident, the debt is not thereby discharged. After maturity, or even after payment, it is still valuable as evidence. If suit should be brought upon it, the production of it by the payee or transferee would make a prima facie case, if it were not cancelled. On the other hand, its possession by the maker would be valuable evidence to show payment. So that a note, even after payment, has a value as evidence. It is property and valuable to the owner, although it may not have a market value. In *Moody* v. *State,* 127 *Ga.* 821 (56 S. E. 993), a written notice which was fastened to a telephone pole, and which warned trespassers against hunting or fishing on land, was held to be property which might be the subject of malicious mischief. Suppose, instead of a promissory note, upon payment of the debt, the debtor should receive a receipt, and this should be stolen or wrongfully converted, would there be any doubt of its value as evidence, and that the owner might recover it in an action of trover? In Fullam *v.* Cummings, 16 Vt. 697, it was held that where a debtor had made copies of his creditor's accounts against him, and the creditor

had got possession of such copies and refused to redeliver them, the debtor might bring an action of trover therefor. The best considered case on the question now before us which has come to our notice is that of Stone *v.* Clough, 41 N. H: 290, in which it was held that "Trover may be maintained by the maker of a promissory note against the payee, after the same is fully paid, if the payee, having the note in his possession, refuses to deliver it to the maker upon demand, or if, after payment, the payee disposes of the note." See also Inhabitants of Otisfield *v.* Mayberry, 63 Me. 197; Buck *v.* Kent, 3 Vt. 99 (21 Am. D. 576); Pierce *v.* Gilson, 9 Vt. 216; Fletcher *v.* Fletcher, 29 Vt. 98; Spencer *v.* Dearth, 43 Vt. 98; Ilson *v.* Thompson, 6 Okl. 74 (52 Pac. 388). In Pierce *v.* Gilson, 9 Vt. 216, supra, there was a dictum of Williams, C. J., that the action could not be maintained where the fact of payment was denied by the payee; but this was criticised and disapproved in Gleason *v.* Owen, 35 Vt. 590, and in Spencer *v.* Dearth, 43 Vt. 98, supra. In Thayer *v.* Manley, 73 N. Y. 305, where an action was brought for the conversion of three notes, it was said that "Although plaintiff has an equitable remedy, he may sue for the conversion." Story's Eq. Jur. §906. In *Rushin* v. *Tharpe,* 88 *Ga.* 779 (15 S. E. 830), it was held that the owner of a promissory note, of which another fraudulently obtains possession and which he converts to his own use by suing it to judgment and collecting the amount due thereon, may, in an action of trover, recover from the latter the value of the note, notwithstanding such suit and judgment and the collection thereof, and notwithstanding the plaintiff had knowledge of these facts before bringing suit. The statement in the opinion that authorities were cited to show that if the note was paid, or in any manner legally discharged, trover would not lie to recover the value of it, for it would have no value, was obiter dictum.

The right of a plaintiff in trover in this State to elect to take a money verdict does not alter the case. If he so elects, it would only affect the question of the amount of damages. If the note is converted before due, its amount furnishes evidence as to its value. But where it has been paid, its amount will furnish no measure of damages. In that event, the damages recoverable would be those actually resulting from the conversion; and if a money verdict was asked and no special damages shown, probably the damages recov-

erable would be nominal. If the plaintiff elected to take a verdict for the property alone, under the Civil Code, §5335, the rule just stated would not apply. The action of trover will determine the title to the note. If the plaintiff recovers it, the payee would of course not be entitled to any judgment upon it. If the plaintiff fails to recover it, the payee will have the note, and can sue upon it, or deal with it as he sees proper. The fact that the payee can not recover a judgment on the note against the plaintiff in the trover suit, but must first abide the determination of its ownership, furnishes no such case of multiplicity of actions as to authorize equitable interference with the suit in trover.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*