**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 1, 2020**

# In the Court of Appeals of Georgia

A20A0159. MCCALLA RAYMER, LLC v. FOXFIRE ACRES, INC.

A20A0160. FOXFIRE ACRES, INC. v. MCCALLA RAYMER, LLC ET AL.

A20A0161. SUNTRUST MORTGAGE, INC. v. FOXFIRE ACRES, INC.

BARNES, Presiding Judge.

Foxfire Acres, Inc., a company engaged in the business of buying, renovating, then reselling foreclosed properties, was the high bidder at a foreclosure sale upon residential property (Property) located in Columbus, Georgia. A year later, and still without either "clear, insurable" title or a refund of the bid amount paid, Foxfire filed suit against the foreclosing entity and its law firm, Suntrust Mortgage, Inc. and McCalla Raymer, LLC, respectively. These interlocutory appeals concern the denial of the defendants' joint motion for summary judgment, as well as rulings on certain

of Foxfire's discovery requests. For reasons explained below, we affirm in part and reverse in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 890 (795 SE2d 195) (2016).

So viewed, the record shows the following. In 1992, the owners of the Property, Charles W. McDaniel and Leslie L. McDaniel, executed a $106,400.00 promissory note in favor of Trust Company Bank of Columbus, N.A., and a related deed to secure the debt in favor of that bank, pledging the Property as security (Security Deed). In 2010, the loan was declared to be in default.

Trust Company Bank had meanwhile been acquired by SunTrust Bank, and SunTrust Mortgage, Inc. (SMI) had become the servicer for the McDaniels' loan. SMI hired McCalla as legal counsel to handle a foreclosure upon the Property. To that end, McCalla advertised in a Columbus newspaper that the Property would be

auctioned on November 2, 2010. On the scheduled date, Foxfire was the high bidder for the Property at $126,000 (Foreclosure Sale). Foxfire's representative gave to McCalla's agent a cashier's check covering the bid amount; in turn, McCalla's agent provided Foxfire's representative with: (i) a document that included a "Receipt and Consent to Terms of Sales" section, which they each executed acknowledging the terms of the Foreclosure Sale; and (ii) a "Receipt" in connection with the Foreclosure Sale.[1] Thereafter, in December 2010, McCalla forwarded to Foxfire a "Deed Under Power of Sale" for the Property.

The next month, in January 2011, an attorney working on behalf of Foxfire to obtain title insurance for the Property alerted Foxfire and McCalla that he had encountered a problem with the title. In particular, the newspaper advertisement had stated that "SunTrust Mortgage, Inc. fka Trust Company Bank of Columbus, N.A." was foreclosing on the Property as "Attorney in Fact for Charles W. McDaniel and Leslie L. McDaniel." However, as is now undisputed, SunTrust Bank – *not* SMI – was the entity formerly known as Trust Company Bank.[2] When the Foreclosure Sale

---

[1] The document showed "SUNT" as the client.

[2] At a 2019 deposition, the individual who was the designated representative for SMI explained that, as of 2008, "SunTrust Mortgage was a wholly-owned subsidiary – subsidiary company of SunTrust Bank . . . . SunTrust Bank was the

was conducted, the Security Deed had not been assigned to SMI. Hence, at the time of the Foreclosure Sale, no assignment of the Security Deed to SMI had been recorded amongst the county's real estate records.[3]

---

parent company of SunTrust Mortgage." She further explained that, with respect to the McDaniel loan, monies "would have been paid to SunTrust Bank. SunTrust Mortgage serviced the loan for SunTrust Bank." As she elaborated, "SunTrust Bank acquired Trust Company Bank of Columbus."

At a 2019 deposition of the designated representative for McCalla, that individual conceded that, with respect to the newspaper advertisement, "McCalla Raymer made the error," which he identified as "[s]tating that SunTrust Mortgage was formerly known as Trust Company Bank of Columbus."

[3] In *Ames v. JP Morgan Chase Bank*, 298 Ga. 732 (783 SE2d 614) (2016), the Supreme Court of Georgia espoused:

> The legislature has indicated its desire to ensure that only the record holders of deeds initiate foreclosure proceedings. OCGA § 44-14-162 (b) requires that "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located," and the stated legislative purpose of this provision is to require a foreclosure to be conducted by the current owner or holder of the mortgage, as reflected by public records.

(Citation and punctuation omitted.) Id. at 741 (3) (e), n. 7. See *Duke Galish LLC v. SouthCrest Bank*, 314 Ga. App. 801, 803 (726 SE2d 54) (2012) (leaving open the question of whether a failure to comply with OCGA § 44-14-162 (b) rendered the sale void or voidable).

4

Nevertheless, Foxfire remained interested in the Property to the extent it could obtain "clear, insurable" title, and thus engaged in discussions with McCalla to make that happen. Foxfire's sole owner contemplated, for example, "a proper foreclosure . . . done in the right name and everything else." Alternatively, he discussed with McCalla a refund of the bid price, plus payment of interest, legal fees, and other amounts to recoup various other costs and lost profits.

In May 2011, McCalla wrote to Foxfire's counsel, "[Y]our client is only entitled to a return of the funds paid to purchase the property, which I am currently attempting to obtain from SunTrust. In addition, in consideration of the delay in returning these funds we are willing to include interest at the rate of 18% per annum from the date of the foreclosure." The letter went on to advise that Foxfire's legal expenses incurred in the matter would be taken into consideration. Given the amount of time that had lapsed since the Foreclosure Sale, however, Foxfire's owner was disillusioned because no money – neither the bid amount, nor any amount as interest, legal expenses, or other costs – had accompanied the letter. The owner elaborated in his deposition that Foxfire needed to be "made whole," and the letter had not accomplished that. By September 2011, almost a year after the Foreclosure Sale,

5

Foxfire's owner was so frustrated by the ongoing communications to seemingly no avail that he was no longer interested in the Property.

On September 15, 2011, Foxfire's counsel sent a letter to McCalla demanding, among other things, the return of the $126,000 paid at the Foreclosure Sale. A month later, McCalla wrote back, "We request your client continue to exercise patience while we seek to resolve the matter with you." When Foxfire's owner was asked about that response in a deposition being conducted by McCalla's counsel, Foxfire's owner replied, "It had been eleven and a half months since we gave them certified money. I don't think eleven and a half months shows any inclination to me. . . . We were fed up with your stalling and your letters and your promises and nothing happens."

On November 18, 2011, Foxfire filed in superior court a complaint against McCalla and SMI. As amended multiple times thereafter, Foxfire sought damages on claims of: (i) fraud; (ii) the commission of the criminal offenses of theft by taking, theft by deception, and theft by conversion; (iii) conversion; (i) breach of contract; and (v) conspiracy. Additionally, Foxfire sought punitive damages, attorney fees, and litigation expenses.

McCalla and SMI denied liability in their answers. In June 2012, they moved for judgment on the pleadings, contending that this case was at most a breach of contract action against SMI that would justify a refund of the purchase price (as opposed to any recovery upon the numerous tort claims pursued by Foxfire). That motion was summarily denied in July 2013.

The following month, August 2013, McCalla delivered a letter to Foxfire's counsel, enclosing checks totaling $126,000, plus an amount it represented was the interest owed from the date of the Foreclosure Sale to the date of the letter. McCalla also proposed in the letter reimbursing Foxfire its reasonable attorney's fees and expenses. Additionally, the letter stated, "The tender of the above funds to Foxfire made with this letter is done so without any condition of any kind." Foxfire did not cash the checks.

By then, Leslie L. McDaniel (whose residential property was foreclosed upon) had filed a bankruptcy petition in December 2012. And in connection with that, McCalla, SMI, and Foxfire were named as defendants in the bankruptcy court. The record in the instant case contains an affidavit filed by Foxfire, wherein its agent recounted that during the pendency of the bankruptcy proceedings, SMI attempted to refund money to Foxfire, but that any such proceeds were "subject to the Bankruptcy

7

Court. The Bankruptcy Court finally gave permission to McCalla . . . and [SMI] to return the $126,000.00, almost three and one-half years [after the Foreclosure Sale]." McCalla's counsel asked Foxfire's owner during his deposition about the August 2013 tender, and Foxfire's owner recapped, "[W]e were under the [stay] with bankruptcy court and we could not accept money. . . . You personally knew we could not accept that money and this money was turned over to the judge of the bankruptcy court. . . . June 6, 2014 was the date that the money was finally made available to me."

Notwithstanding, as Foxfire's owner further deposed, the amount of interest was not what McCalla had previously agreed to pay, and Foxfire was otherwise still not made whole. As he also testified during his deposition with McCalla's counsel, the prolonged and allegedly wrongful retention of the money had "stopped [Foxfire's] operations in its tracks."

On April 1, 2019, McCalla filed a motion for summary judgment as to all Foxfire's claims, and SMI joined in that motion. The trial court held a hearing on that motion, as well as on several pending discovery motions. On May 30, 2019, the trial court denied all such motions in a single order, giving rise to these appeals. In Case Nos. A20A0159 and A20A0161, McCalla and SMI, respectively, contest the denial

of the summary judgment motion. And in Case No. A20A0160, Foxfire contests discovery rulings. We consider Case Nos. A20A0159 and A20A0161 together, as they present similar issues.

*Case Nos. A20A0159 and A20A0161*

1. McCalla and SMI contend that the trial court erred by denying them summary judgment as to Foxfire's fraud claim. We agree.

> The five elements essential to a tort suit for damages resulting from a material misrepresentation constituting fraud are: (1) that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.

(Citation and punctuation omitted.) *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647-648 (2) (629 SE2d 468) (2006). "For a fraud action to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort. It follows that where there is no evidence of [any one essential element] . . . , there can be no recovery [upon a fraud claim]." (Citations and punctuation omitted.) *Johnson v. Johnson*, 323 Ga. App. 836, 838-839 (747 SE2d 518) (2013).

Foxfire cites as the requisite false representation language in the foreclosure advertisement: "SunTrust Mortgage, Inc. fka Trust Company Bank of Columbus, N. A."[4] McCalla and SMI have each conceded that such information was incorrect. Their arguments below, however, included that Foxfire had failed to evince justifiable reliance. It is undisputed that, prior to the date of the Foreclosure Sale, Foxfire retained an attorney to check the title to the Property; his search revealed that the Security Deed on the Property was vested in the name of Trust Company Bank of Columbus, N. A. – and not SMI.

> Georgia courts over the decades have adhered to one "bright-line" rule in this area: when the falsity of the representation could have been revealed by a search of the county land records, a failure to search those records makes the reliance on the representation unjustified as a matter of law. This rule applies [where, as here,] the representation concerns the purchase of real estate.

---

[4] Foxfire states in its brief that McCalla and SMI made a number of misrepresentations after the date of the Foreclosure Sale, but "in order to sustain [a] cause of action for fraud the record must show that plaintiff[ ] . . . acted upon the misrepresentation of defendants." *Davis v. Northside Realty Assoc.*, 165 Ga. App. 96, 97 (2) (299 SE2d 186) (1983). If follows then that "representations which are not used as a basis for action will furnish no ground for complaint." *North Peachtree I-285 Properties, Ltd. v. Hicks*, 136 Ga. App. 426, 430 (2) (221 SE2d 607) (1975).

10

(Footnote omitted.) *Dyer v. Honea*, 252 Ga. App. 735, 740-741 (3) (b) (557 SE2d 20) (2001). Given the circumstances here,[5] Foxfire cannot show justifiable reliance on the cited language in the advertisement. See *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 547 (2) (722 SE2d 743) (2012) ("A purchaser of land is charged with notice of the recorded instruments in the property's chain of title, and notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led.") (citation and punctuation omitted); *BPP069, LLC v. Lindfield Holdings*, 346 Ga. App. 577, 583-584 (1) (816 SE2d 755) (2018) (reiterating that "a purchaser of land in this state is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed"; that "[a] purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title"; and that the "[c]hain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument")

---

[5] While Foxfire's attorney actually inspected the title records, we have held that reliance may not be justified "when the falsity of the representation *could have been revealed* by a search of the county land records." (Emphasis supplied.) *Dyer*, 252 Ga. App. at 740 (3) (b).

11

(citations and punctuation omitted); *Dyer*, 252 Ga. App. at 741 (3) (b) (explaining that "the law expects citizens to exercise at least a minimum of due care to protect themselves from fraud").

McCalla and SMI were thus entitled to summary judgment on the fraud claim. See *Shaw v. Robertson*, 307 Ga. App. 337, 339 (1) (705 SE2d 210) (2010) ("Failure to show, in opposition to summary judgment, some evidence from which each element could be found by a jury allows the [fraud claim] to be disposed of summarily.") (citation and punctuation omitted).

2. McCalla and SMI contend that the trial court erred by denying them summary judgment on the claims alleging that they committed the criminal offenses of theft by taking, theft by deception, and theft by conversion; McCalla and SMI argue that no such claims for civil liability exist under Georgia law. Foxfire counters that McCalla and SMI incurred civil liability by committing criminal offenses set out at OCGA §§ 16-8-2 (theft by taking), 16-8-3 (theft by deception), 16-8-4 (theft by conversion), when they "conducted a fraudulent foreclosure on November 2, 2010 knowing that an Assignment was necessary, and that the 'fka' designation was totally untrue." We agree with McCalla and SMI.

12

"The violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby." (Citation and punctuation omitted.) *Oswald v. American Natl. Can Co*., 194 Ga. App. 882, 883 (392 SE2d 26) (1990); see *Sparks v. Thurmond*, 171 Ga. App. 138, 142 (5) (319 SE2d 46) (1984) (same). Foxfire has made no showing that the alleged penal violations give rise to civil liability. Indeed, nothing in the cited statutory provisions indicate that the legislature meant to impose a civil as well as criminal penalty for a violation. See *Anthony v. American Gen. Fin. Svcs*., 287 Ga. 448, 455 (2) (a) (697 SE2d 166) (2010) (reciting that "civil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute," and "the indication that the legislature meant to impose a civil as well as criminal penalty must be found in the provisions of the statute at issue, not extrapolated from the public policy the statute generally appears to advance") (citation, punctuation and emphasis omitted); accord *Stroman v. Bank of America Corp*., 852 FSupp2d 1366, 1380 (III) (M) (ND Ga. 2012) (ascertaining that OCGA §§ 16-8-2, 16-8-3 and 16-8-4 are criminal provisions that do not purport to create a private cause of action). Accordingly, McCalla and SMI were entitled to summary judgment on Foxfire's claims predicated upon alleged commissions of the criminal

offenses of theft by taking, theft by deception, and theft by conversion. See *Oswald*, 194 Ga. App. at 883 (affirming grant of summary judgment in favor of defendants, because the alleged willful violations of the penal provisions did not support a civil action for damages).

3. McCalla and SMI contend that the trial court erred with respect to Foxfire's conversion claim.

"The tort of conversion involves an unauthorized assumption and exercise of the right of ownership over property belonging to another, in hostility of his or her rights; an act of dominion over the personal property of another inconsistent with his or her rights; or an unauthorized appropriation." (Footnote omitted.) *Both v. Frantz*, 278 Ga. App. 556, 557 (1) (629 SE2d 427) (2006). "Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion." (Citation and punctuation omitted.) *Decatur Auto Center v. Wachovia Bank,* 276 Ga. 817, 819 (583 SE2d 6) (2003).

Foxfire posits that McCalla and SMI converted $126,000 when they retained the money paid "on November 2, 2010 even after knowing the 'fka' representation in . . . the written advertisement . . . prior to the sale [was] false[.]" Foxfire asserts

14

that, in doing so, McCalla and SMI effectively "destroyed [it], a very small private business in Columbus, Georgia, in order to retain the $126,000."[6]

McCalla and SMI point out that, since the filing of this lawsuit, Foxfire has been refunded the $126,000 paid at the Foreclosure Sale, plus an amount as interest. Therefore, they maintain entitlement to summary judgment under the principle that "a plaintiff suing for the conversion of money may recover the amount of money converted, plus interest from the date of conversion." *Felker v. Chipley*, 246 Ga. App. 296, 297 (1) (540 SE2d 285) (2000). But neither McCalla nor SMI has pointed to anything in the record establishing that such monies were accepted by Foxfire as full settlement and release from (potential) liability in this case.[7] See generally *Zaldivar*

---

[6] Foxfire charges McCalla and SMI with conversion, asserting that SMI used a portion of the $126,000 to pay to McCalla legal fees relating to the Foreclosure Sale; additionally, Foxfire's suit carries a conspiracy claim.

[7] Instead, as set out above, Foxfire insisted below that it had *not* been made whole, and it is clear that Foxfire continues to advance substantive claims, as well as derivative claims of conspiracy, attorney fees, litigation expenses, and punitive damages. In addition, Foxfire filed an affidavit in 2017 wherein its owner averred, "The Defendants waited over three and one-half years before returning Foxfire Acre's $126,000. The acceptance of that sum of money did not and does not waive Foxfire Acres' rights to recover additional legal damages over and above said sums." See generally *Long v. McIntosh*, 129 Ga. 660 (59 SE 779) (1907) (discussing special and nominal damages within the context of a conversion claim); *Grant v. Newsome*, 201 Ga. App. 710, 710-711 (1) (411 SE2d 796) (1991) (contemplating that a plaintiff in a conversion action may recover, inter alia, lost interest, punitive damages, as well as

15

*v. Prickett*, 297 Ga. 589, 597 (1) (774 SE2d 688) (2015) ("[A] settlement agreement ordinarily extinguishes conclusively any potential liability that the settlement was meant to resolve."). Moreover, Foxfire continues to argue that the amount of interest was inadequate, and McCalla and SMI have failed to demonstrate by the record that their calculation of interest (apparently through August 2013[8]) satisfied the amount due as a matter of law. See generally *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999) ( "A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed."). Given the circumstances here, McCalla and SMI have failed to demonstrate merit in their contention that they are entitled to summary judgment on Foxfire's conversion claim.

4. McCalla and SMI maintain entitlement to summary judgment on Foxfire's breach of contract claim.

(a) McCalla claims that Foxfire's breach of contract fails as against it, because as a law firm, it acted only as agent for a disclosed client and principal, SMI. See

consequential damages).

[8] McCalla and SMI set out in their appellate briefs that "Foxfire initially did not accept or reject [their] tender and the checks became stale"; and that "replacement checks . . . were transmitted [in June 2014]."

16

OCGA § 10-6-53 ("[I]f the principal name is disclosed and the agent professes to act for him, it will be held to be the act of the principal."); *Anaya v. Coello*, 279 Ga. App. 578, 580 (632 SE2d 425) (2006) (recognizing that an attorney-client relationship is that of a principal and agent); *Villaneuva v. First American Title Ins. Co.*, 313 Ga. App. 164, 166-167 (1) (721 SE2d 150) (2011) (physical precedent only) (law firm closing real estate transaction not liable for breach of contract). Because Foxfire has cited neither fact, nor authority allowing for a finding that it had entered into a contract with McCalla, summary judgment should have been granted on its breach of contract claim against McCalla. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

(b) SMI points out that, under Georgia law, in order to recover on a claim for breach of contract, a plaintiff must establish: "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation and punctuation omitted.) *Duke Galish*, 308 Ga. App. at 320 (2). SMI takes the position, "To the extent Foxfire characterizes the [documents handed to its representative by McCalla's agent at the Foreclosure Sale] as a contract between [SMI] and Foxfire, Foxfire presented no evidence of any damages over and above the tendered return of the purchase price." SMI's bare assertion – that Foxfire presented

17

no evidence of any damages over and above the tendered return of the purchase price – is unavailing.

"It has long been the rule that the measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value of the land at the time of the breach." *Quigley v. Jones*, 255 Ga. 33, 33 (334 SE2d 664) (1985). The underpinning of SMI's assertion is that the fair market value of the Property at the time of the Foreclosure Sale was Foxfire's high bid of $126,000. But SMI has cited no authority to show that such amount paid constituted, as a matter of law, the Property's fair (or true) market value. To the contrary, "Georgia law recognizes that the sale price obtained at a foreclosure sale is *not* a sufficient indicator of true market value." (Emphasis supplied.) *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 261 (1) (424 SE2d 889) (1992). This Court has repeatedly recognized that "foreclosure sales are forced sales and notoriously fail to bring the true market price of the property." Id.; see *Ga. Ltd. Partners, LLC v. City Natl. Bank*, 323 Ga. App. 766, 767 (748 SE2d 131) (2013) (physical precedent only); see generally *National Community Builders v. Citizens & Southern Natl. Bank*, 232 Ga. 594, 596 (III) (207 SE2d 510) (1974) (noting that whether the high bid at a foreclosure sale amounted to the fair market price is a question of fact); *Delta Air Lines v. Clayton*

18

*County Bd. of Tax Assessors*, 246 Ga. App. 225, 235 (4) (539 SE2d 905) (2000) ("Determination of the fair market value of the property involved is generally a question for the trier of fact.").

Given the foregoing, the record does not establish SMI's premise that "Foxfire presented no evidence of any damages over and above the tendered return of the purchase price." Consequently, SMI's challenge to the denial of summary judgment on the breach of contract claim falls short of demonstrating reversible error.

5. McCalla and SMI maintain entitlement to summary judgment on Foxfire's conspiracy claim, citing the principle that conspiracy is not an independent cause of action under Georgia law.

Indeed, "[t]he cause of action for civil conspiracy lies not in the conspiracy itself, but in the underlying tort committed against the plaintiff and the resulting damage." (Punctuation and footnote omitted.) *Dyer*, 252 Ga. App. at 738 (2). But because Foxfire's case against them is not lacking an underlying tort, the cited principle is unavailing to McCalla and SMI.

6. McCalla and SMI contend that the trial court erred by denying them summary judgment on Foxfire's claim for punitive damages, arguing that such claim cannot survive without an underlying tort claim, and asserting that Foxfire has failed

19

to adduce evidence authorizing such damages. They additionally maintain that "the error in the foreclosure ad was simply a mistake on the part of McCalla, and 'mere negligence will not support an award of attorney fees based on bad faith, or an award of punitive damages.' *Hartsock v. Rich's Employees Credit Union*, 279 Ga. App. 724, 727 (632 SE2de 479) (2006)."

Foxfire counters that punitive damages are allowed under OCGA § 51-12-5.1 (b), which states:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Contrary to McCalla and SMI's argument, Foxfire is not without an independent tort claim at this juncture. It retains a claim for conversion, which is an intentional tort and thus may support an award of punitive damages and an award of attorney fees. See *Felker*, 246 Ga. App. at 298 (2). And neither McCalla nor SMI has advanced a meritorious argument that the evidence, when viewed in favor of Foxfire as the non-movant, does not authorize a finding of liability on claims for conversion, conspiracy, and punitive damages. See generally id.

20

7. McCalla and SMI challenge the denial of their summary judgment motion as to Foxfire's claims for attorney fees and litigation expenses, arguing that such derivative claims cannot survive without an underlying tort claim, and further arguing that certain of the alleged amounts sought are not recoverable under Georgia law. Foxfire counters that a jury must determine the amount of attorney fees and expenses, asserting that "[t]he intentional and fraudulent conversion and criminal conversion of $126,000.00 for four (4) years is that type of stubborn litigiousness, willfulness, malice and fraud which would support an award of attorney's under OCGA § 13-6-11."

For reasons explained above, McCalla and SMI's attack upon these derivative claims as lacking an underlying tort claim is unavailing. And while McCalla and SMI are correct in that "an award of attorney fees is to be determined upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees," *Patton v. Turnage*, 260 Ga. App. 744, 748 (2) (580 SE2d 604) (2003), the trial court did not err by allowing these derivative claims to proceed to trial.

8. McCalla and SMI contend that "most of the elements of damages sought by Foxfire are not recoverable under Georgia law." While Foxfire apparently seeks to recoup, among other things, lost profits and various other expenses, it is not clear

21

from the record which claims Foxfire advanced in support thereof. Nor is it clear whether the trial court reached such issues. And given our holdings above as to which of Foxfire's claims have (or have not) survived thus far, we exercise our discretion to allow the trial court to consider in the first instance whether the challenged damages are recoverable under the claims that remain viable. See generally *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (holding that appellate courts retain discretion whether to remand for the trial court to consider legal issues in the first instance).

### *Case No. A20A0160*

9. In several related claims of error, Foxfire contends that the trial court erred in ruling against it on its discovery requests for allegedly privileged emails between McCalla and SMI.

"The Georgia Civil Practice Act provides for 'discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *McKinnon v. Smock*, 264 Ga. 375, 376 (1) (445 SE2d 526) (1994), quoting OCGA § 9-11-26 (b) (1).

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . . The

22

privilege generally attaches when legal advice is sought from an attorney, and operates to protect from compelled disclosure any communications, made in confidence, relating to the matter on which the client seeks advice.

(Citations and punctuation omitted.) *St. Simons Waterfront v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 421-422 (1) (746 SE2d 98) (2013). "[B]ecause recognition of the privilege operates to exclude evidence and thus impede the truth-seeking process, the privilege is narrowly construed." Id. at 422 (1). "Our general rules on the attorney-client privilege provide that the privilege attaches where (1) there is an attorney-client relationship, (2) the communications in question relate to the matters on which legal advice was sought, (3) the communications have been maintained in confidence, and (4) no exceptions to privilege are applicable." (Citations omitted.) Id. at 423 (1).

Despite Foxfire's quest for access to the emails between McCalla and SMI, none of the authorities cited by Foxfire demonstrates that the trial court erred by neither compelling production of the emails nor conducting an in camera inspection of them. See generally *Boles*, 270 Ga. at 455 (1).

10. Foxfire contends that the trial court erred in refusing its request for an order to produce an unredacted copy of an indemnity agreement between McCalla and SMI.

23

According to Foxfire, such agreement was relevant to its fraud claim. Given our holding in Division 1, this contention is moot.

11. Foxfire contends that the trial court erred in denying its motion to compel testimony from SMI's designated representative to the extent the representative claimed attorney-client privilege and/or work-product privilege. Foxfire asserts that it sought purely factual details, and that the attorney-client and work product privileges do not bar discovery of facts. Because Foxfire does not specify which privilege assertions it contests at this juncture, it has failed to carry its burden of proving error affirmatively by the record. See generally *Luong v. Tran*, 280 Ga. App. 15, 18-19 (2) (633 SE2d 797) (2006) (reiterating that "[the appellant] bears the burden of showing error affirmatively by the record," and that it is not the appellate court's job to cull the record on behalf of a party).

12. Foxfire contends that the trial court erred by refusing to strike SMI's answer and defenses, maintaining that its OCGA § 9-11-30 (b) (6) representative "refused to give the facts and the names of witnesses" to support its defense. "In matters involving discovery disputes, trial judges have broad discretion in controlling discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion."

(Punctuation and footnote omitted.) *Mincey v. Ga. Dept. of Community Affairs*, 308 Ga. App. 740, 747 (2) (708 SE2d 644) (2011). Foxfire has not demonstrated that the harsh sanction of striking defenses was mandated in this case.

*Judgment affirmed in part and reversed in part. Gobeil and Pipkin, JJ., concur.*